De Grauw *v.* Mechan.

AARON A. DE GRAUW et al.

*v.*

JOHN MECHAN et al.

1. *Quære.* Whether a voluntary conveyance, by one who had assumed the payment of a mortgage on other property, the title of which he had previously held and conveyed, made before proceedings to foreclose the mortgage, and for a decree for deficiency against him under the law as it stood in 1877, will be presumed fraudulent as against one owning the mortgage?

2. Delay by complainant in the enforcement of remedies, involving a lapse of time during which conditions had been changed, which cannot be reinstated, money had been expended in improvement of property attacked, parties and witnesses had died, and indemnity imperiled or lost, is ground for a court of equity to withhold relief.

3. A complainant who has, under an execution, purchased property at a grossly inadequate price, under circumstances which gave him an unfair advantage, and whose conduct has been such as to render it unjust to grant him relief, cannot successfully invoke the aid of a court of equity to confirm his title.

4. Public judicial sales should be conducted so as to produce, not only the money due on the execution, but as much as possible for the parties in interest, and to that end full, free and fair competition should be secured.

5. A court of equity does not extend its aid to the enforcement of stale or inequitable demands, and should not willingly give encouragement to the unearthing of neglected litigation for purposes of speculation.

On bill, answer and proofs taken in open court.

*Mr. William B. Gilmore,* for the complainants.

*Mr. James F. Minturn,* for the defendants.

GREEN, V. C.

On the 7th day of March, 1868, the assignor of the complainants, to secure the payment of $1,500 and interest, took a mortgage from John Meighan on certain real estate in the Town of Union, Hudson county.

De Grauw *v.* Mechan.

On the 14th day of May, 1868, John Meighan and wife conveyed the same premises to John Mechan, subject to the said mortgage, the deed reciting that the principal of the said mortgage was included in and formed part of the consideration money thereof. On the 3d day of March, 1873, John Mechan and wife conveyed the premises to Catharina Elizabeth Scholerman, subject to the mortgage first above mentioned, the payment of which was assumed by the grantee as part of the consideration money, and took also a consideration mortgage of $800.

The complainant filed a bill to foreclose the mortgage for $1,500, making John Meighan, John Mechan and Catharina Elizabeth Scholerman defendants, in which action final decree was entered on the 20th day of April, 1877, for the amount of the complainant's mortgage, interest and costs, and certain amounts to other encumbrancers, and for any deficiency in complainant's claim, after sale of the mortgaged premises, against John Meighan, John Mechan and Catharina Elizabeth Scholerman.

Execution on this decree was issued June 20th, A. D. 1877, and the property sold by the sheriff of Hudson county, September 6th, 1877, to Aaron A. De Grauw, as general guardian of Maud Kissam, the complainant, for $100.

On November 16th, 1889, twelve years and two months thereafter, an order was entered in the cause that the deficiency due complainant on the sale of the premises is ascertained to be $1,895.84, with interest from September 6th, 1877. On the same day execution was issued out of this court against John Meighan, John Mechan and Catharina Elizabeth Scholerman, to make the amount of the said deficiency so ascertained; and on the 25th day of November, A. D. 1889, the sheriff of Hudson county, in default of sufficient goods and chattels of the defendants, levied on all the right, title and interest of Mechan in the lands in Hoboken involved in the controversy in the present suit.

The bill in this cause is in the nature of a creditors' bill, was filed November 25th, 1889, and is based upon the following facts:

John Mechan, being seized in fee of two lots, one being an irregularly shaped lot with frontage on Clinton street and also on First street in Hoboken, the other being a lot in West Hoboken, on the westerly side of the Paterson and New York plank road, a distance of about one hundred feet from Paterson avenue, by deeds dated on or about January 4th, 1875, together with Mary, his wife, conveyed the same to one Thomas W. Sweeney, who by deed immediately thereafter reconveyed the same to Mary Mechan, the wife of the said John Mechan.

These conveyances are alleged to have been voluntary, and made for the purpose of and with the intent to hinder, delay and defraud the complainants in the enforcement of the liability of John Mechan for the mortgage debt above referred to.

The buildings that were on the property in 1875 were destroyed by fire some four years ago, and others were erected in the place thereof, of a better class and more valuable than those destroyed.

Mary Mechan, wife of John Mechan, died in 1878, in the city of Brooklyn, New York State, having made her last will and testament, alleged to be in proper form to pass real estate in New Jersey, leaving her surviving her husband, John Mechan, and Eugenie, wife of William H. Leach, Mary F. Mechan and Geraldine Mechan, heirs-at-law, all of them being of full age.

The will of Mrs. Mechan was not produced on the trial, nor does it appear that the same has ever been proved or recorded in this state.

A sale of the right, title and interest of John Mechan in the Hoboken property was made by the sheriff of Hudson county on the 27th day of February, 1890, under the *fieri facias* issued on the order ascertaining the deficiency, entered on the 16th day of November, 1889, in the original foreclosure suit. Said sale was after the filing of this bill, but before any of the defendants were served with process or brought into court, and the fact of the sale was incorporated in the bill by way of amendment.

The whole property was sold by the sheriff to the complainant Aaron De Grauw, as general guardian of the other complainant, for $1,650.

De Grauw *v.* Mechan.

The bill alleges that the first described property in Hoboken was worth $5,000 in 1875, and it appears by the testimony of Mr. William H. Harper, a real estate dealer, that the lots are now worth $4,000 and the improvements $1,500. The bill alleges that the second tract in Hoboken was worth $2,000, but no evidence was given on the trial as to its value.

The answers admit that the conveyance of the smaller tract from John Mechan to Thomas W. Sweeney, and from him to Mrs. Mechan, was without consideration, but are silent as to the other. The conveyances of this tract were put in evidence, from which it appears that the consideration of each was one dollar, and no evidence was produced of any other.

No testimony was given which even tended to show any actual fraud in the transfer of the property from John Mechan, through Mr. Sweeney, to his wife, the complainants resting their case on the position that these conveyances were voluntary, and claiming that they were presumed to be fraudulent as against the complainant De Grauw, on the rule that the law conclusively presumes a voluntary conveyance to be fraudulent as to prior and existing creditors of the grantor. *Cook* v. *Johnson, 1 Beas. 51; Haston* v. *Castner, 4 Stew. Eq. 697; Hagerman* v. *Buchanan, 18 Stew. Eq. 292; Gardner* v. *Kleinke, 1 Dick. Ch. Rep. 90.*

At the time these conveyances of the Hoboken property were made, in 1875, De Grauw held the mortgage on the other property in the Town of Union, which John Mechan had taken the title to in 1868, subject to the mortgage, the amount of which was taken as part of the consideration, and which property he had, in 1873, conveyed to Mrs. Scholerman, subject to the mortgage, and who in turn had assumed the payment thereof. The proceedings to foreclose the mortgage were not commenced until 1877, two years after the conveyances which are now attacked, so that in 1875, when Mechan conveyed the Hoboken property, he stood in the position of having, in 1868, covenanted with the grantor of another property to pay a mortgage thereon, which property he sold and conveyed in 1873, his grantee assuming on her part the payment of the said mortgage.

De Grauw *v.* Mechan.

Mr. Justice Depue, in the case of *Crowell* v. *Hospital, 12 C. E. Gr. 650–653,* says, with reference to stipulations similar to the one in question : " In equity a stipulation of this kind is regarded as a contract simply to indemnify the grantor against the mortgage debt. As such, it is operative between the parties to the deed, but does not make the mortgage debt a personal debt of the grantee." On *p. 655 :* " The right of a mortgagee to enforce payment of the mortgage debt, either in whole or in part, against the grantee of the mortgagor, does not rest upon any contract of the grantee with him, or with the mortgagor for his benefit." On *p. 656:* " Recovery of the deficiency after sale of the mortgaged premises, against a subsequent purchaser, is adjudged in the court of equity to the mortgagee not in virtue of any original equity residing in him. He is allowed, by a mere rule of procedure, to go directly as a creditor against the person ultimately liable, in order to avoïd circuity of action, and save the mortgagor, as the intermediate party, from being harrassed for the payment of the debt, and then driven to seek relief over against the person who has indemnified him, and upon whom the liability will ultimately fall. The equity on which his relief depends is the right of the mortgagor against his vendee, to which he is permitted to succeed by substituting himself·in the place of the mortgagor. In this respect the mortgagee occupies an entirely different position from that of a surety. The latter, in virtue of his position as surety, acquires in himself a legal right of subrogation to all securities for the debt which come to the possession of the creditor."

The rights of a mortgagee as against the assumer of the mortgage, therefore, in this state do not rest in any sense upon contract, but on a rule, analogous to that of subrogation, by which he is allowed to proceed in equity directly against such grantee. It is, however, a right which may be destroyed by the extinguishment of the liability by the original parties to the contract of indemnity before its attempted enforcement (*Crowell* v. *Hospital, supra*) ; or by a *bona fide* release between them before bill filed (*Youngs* v. *Trustees, 4 Stew. Eq. 290*) ; it is not, therefore, in a legal sense, his personal debt to the mortgagee (*Mount* v.

De Grauw *v.* Mechan.

*Van Ness, 6 Stew. Eq. 262 ; Terhune* v. *White, 7 Stew. Eq. 98 ;· Mellen* v. *Whipple, 1 Gray 317 ; Pettee* v. *Peppard, 120 Mass.. 522 ; Keller* v. *Ashford, 133 U. S. 610 ; Willard* v. *Wood, 135· U. S. 309*).

These considerations give much force to the contention that the complainants, in 1875, two years before foreclosure, did not occupy the position of creditors of Mechan, in the sense that the· law will conclusively presume a voluntary conveyance by him,. at that time, fraudulent as against them. The view, however,. which I take of this case, and the grounds on which I think it is to be disposed of, render it unnecessary, if not ill-timed, that· this question should be disposed of in this suit.

This court cannot look with favor upon the case of a com-- plainant who has remained inactive for years, during which time· innocent parties, whose interests are jeopardized by his dormant rights, have gone on in fancied security, to expend money in improvements, to make provision for the future support of their· families, and to forego the enforcement of indemnity until it has· been imperiled, if not lost, who at last awakens to enforce his rights, when conditions cannot be reinstated, when witnesses are· dead and parties bankrupt, when the truth has been necessarily· obscured by the lapse of time, and especially when he so con-- ducts his cause as to make it inequitable to grant the relief he· demands.

Lord Camden, in *Smith* v. *Clay, 3 B. C. C. *639, *640, note,.* says : "A court of equity which is never active in relief against conscience or public convenience, has always refused its aid, to· stale demands, when the party slept upon his right, and acqui- esced for a great length of time. Nothing can call forth this· court into activity, but conscience, good faith and reasonable diligence ; when these are wanting, the court is passive and does· nothing. Laches and neglect are always discountenanced, and, therefore, from the beginning of this jurisdiction, there was· always a limitation to suits in this court." *Doughty* v. *Doughty,. 2 Stock. 349 ; Shipman* v. *Cook, 1 C. E. Gr. 251 ; Cooper* v. *Carlisle, 2 C. E. Gr. 525 ; Brown* v. *Mutual Benefit Life Ins. Co., 5 Stew. Eq. 809 ; Wood* v. *Chetwood, 6 Stew. Eq. 9, 21 ;·*

De Grauw v. Mechan.

*McCartin* v. *Traphagen, 16 Stew. Eq. 323, 338; Collins* v. *Collins, 18 Stew. Eq. 813, 820; Van Houten* v. *Van Winkle, 1 Dick. Ch. Rep. 380, 382; Lynch's Admr.* v. *Vannemans, 18 Atl. Rep. 468; Sullivan* v. *Portland R. R. Co., 94 U. S. 806, 811; Stearns* v. *Page, 7 How. (U. S.) 819, 829; Godden* v. *Kimmell, 99 U. S. 201; Aldridge* v. *Muirhead, 101 U. S. 402; Randolph* v. *Quidnick Co., 135 U. S. 457, 462; Story Eq. Jur.* § *1520.* Nor is the rule different where the delay is in the prosecution of a cause commenced. *Shipman* v. *Cook, supra; Sebring* v. *Sebring, 16 Stew. Eq. 59, 61.*

But conscience and good faith are as requisite as diligence to secure the aid of a court of equity. It has no sympathy with underhanded efforts to gain a speculative advantage, and will not enforce a technical legal right to the unconscionable injury of a defendant. In *Mississippi and M. R. R Co.* v. *Cromwell, 91 U. S. 643,* the complainant had filed a bill, in the court below, to compel the transfer of certain shares of stock which he had purchased at an execution sale, made by the United States marshal. The company was practically extinct and the sale was for a sum almost nominal, but there was a contingent fund of a considerable amount which might possibly be reached. Mr. Justice Bradley (at *p. 645*) says: "He (the complainant) paid no adequate consideration to entitle him to claim it (a portion of the fund) as a matter of equity. If the law gives it to him, he should seek his remedy at law. Equity will not lend its aid to any such games of hazard." And again: "The court is not bound to shut its eyes to the evident character of the transaction. It will never lend its aid to carry out an unconscionable bargain, but will leave the party to his remedy at law."

*Randolph* v. *Quidnick Co., 135 U. S. 457,* was a case in which the complainant having, at a sale under execution, bought the right of the defendant in attachment in certain stock for a grossly inadequate sum, filed his bill to establish his title to the shares of stock thus purchased, the same having been transferred ten years before for the benefit of creditors, which transfer was attacked as illegal. Mr. Justice Brewer (at *p. 463*) says: "Equity administering its remedies in accordance with its own

15

rules, affirms that the best of rights may be lost by unreasonable delay in their assertion, and, when coupled with long delay, is a scheme for great personal gain, at the expense of equally deserving creditors, it refuses to lend its aid to the accomplishment thereof."

The principle of these cases is founded on the cardinal maxim, that "He who seeks equity must do equity." Chancellor Williamson, in *Doughty* v. *Doughty, 2 Stock. 347, 348,* says: "One acknowledged principle, on which courts of equity give relief, is to prevent an advantage gained at law from being used against conscience." It would be a mockery, in the face of such a principle, for the court to lend its aid to a technical legal right surreptitiously obtained, the enforcement of which would be inequitable and unjust.

In the light of these principles of equity, how do the complainants stand in this cause?

In the first place, the large deficiency they seek to collect is the result of the purchase by De Grauw, for $100, of the property they formerly took as security for $1,500. That deficiency was created in 1877 and could then have been enforced.

There is not an incident or a right which they invoke in November, 1889, as a basis for relief, which was not available in 1877. The transfers now attacked had been made two years before, and notice of the conveyances had been given by their record. Nothing was done in secret—the entire transaction was published to every one—by proper diligence the complainants could then have possessed themselves of any facts which they now urge to invalidate these conveyances.

The cases cited by counsel that fraud is never cured by delay apply to actual fraud which has been concealed; they have no reference to a case founded on that which the law presumed fraudulent as against creditors, nor where the facts are known or ought to be known by the parties. With full notice of every fact now invoked, these complainants slept upon their rights without reasonable excuse for over twelve years. Then, without any apparent reason, they awaken to a vigorous and relentless prosecution of their claims. Nothing appears on the surface to

·explain the activity which succeeds this long period of repose, but some secret prompting recalls them from the forgetfulness ·and neglect which for twelve years have characterized their connection with the case.  In that time the buildings upon the property were destroyed and replaced by more valuable ones, and ·other important occurrences have ·happened.  These proceedings are revived without notice; the deficiency is established by the record; whether any sum has been paid since the first sale does not appear; but there is no proof that the whole is unpaid; Mrs. Mechan, the person most interested in the transfer now attacked, has died.  What has become of the other parties to the transaction is not proved—what evidence has been buried in the past does not and cannot be known.

Indemnity has been, at least, endangered.  Catharina E. Scholerman, who, by the assumption of the mortgage in John Mechan's conveyance to her, as between themselves, became the principal debtor (*Klapworth* v. *Dressler, 2 Beas. 62; Hoy* v. *Bramhall, 4 C. E. Gr. 563; Crowell* v. *Hospital, 12 C. E. Gr. 650*), and against whom he had a right of action at law on his payment of the deficiency (*Finley* v. *Simpson, 2 Zab. 311; Bowles* v. *Beach, 2 Zab. 680; Thayer* v. *Torrey, 8 Vr. 343*),· appears by the sheriff's return to the execution to be without property in the county where she resided, when such residence is shown by the records herein.

The deed to her whereby she assumed the payment of the ·mortgage was .dated March 3d, 1873.  The mortgage was then due, and Mechan had an immediate right of action in equity :against her to compel payment of the debt.  *Irick* v. *Black, 2 C. E. Gr. 189, 195; Delaware, Lackawanna and Western R. R. ·Co.* v. *Oxford Iron Co., 11 Stew. Eq. 151, 153; Cubberly* v. *Yager, 15 Stew. Eq. 289; Woodbridge* v. *Norris, L. R. (6 Eq. Cas.) 410.* The inactivity of complainants justified Mechan in not resorting to his remedy.  The mortgaged premises stood as security not ·only for the amount of complainants' mortgage, but for a second and third mortgage of $800 and $263 respectively.  Foreclosure was not commenced for four years after the Scholerman deed; .and, after the sale, complainants had the property, and were ap-

parently satisfied. They did not enforce their claims until more-
than sixteen years after the deed to Mrs. Scholerman was given.
After that time he could not have that remedy, for equity
would apply the statutory limitation to an action brought after
its expiration against her upon her assumption of the mortgage
in the deed. *Hovenden* v. *Lord Annesley, 2 Sch. & L. 607, 630,
632 ; Kane* v. *Bloodgood, 7 Johns. Ch. 90, 117 ; Knox* v. *Gye,.
L. R. (5 Eng. & Ir. App. Cas.) 656, 674 ; Conover* v. *Conover,.
Sax. 403.* The fact that the defendant has during complain-
ant's inaction lost a remedy over against others for indemnity is·
a ground for a court of equity to withhold relief. *Collins* v. .
*Collins, 18 Stew. Eq. 813, 820.*

But to grant relief under this bill to the complainants now
would be inequitable.

The complainant issued a *fieri facias* in the suit November-
16th, 1889. This bill was filed November 25th, 1889. It is in
aid of such execution. The prayer is :

"And that the said defendant, or some, or one of them, may be decreed to·
pay unto your orators the full amount of the deficiency decree hereinbefore·
set forth, with interest and costs and execution fees accrued thereon, and that,
it may be adjudged and decreed, that the said conveyances are fraudulent and'
void as against the said execution of your orators, and that the said lands in--
cluded in said conveyances may be sold under said execution free, clear and!
discharged of the said conveyances, and the proceeds of the sale thereof may·
be applied to the payment of your orator's said deficiency decree, interest and.
costs, and such further and other relief &c."

It appears that on the 26th day of November, 1889, the under--
sheriff of Hudson county made an affidavit as to the non-residence·
of the defendants. Instead of pushing this cause, and bringing-
defendants into court, so that they might have notice, and if the·
court, on the presentation of the case, should come to the conclu-
sion that these conveyances were voluntary, and that the com--
plainant De Grauw was an existing creditor at the time they
were made, have protected their interests when the property came·
to be sold, the complainants kept the proof of the non-residence·
of the defendants until March 12th, 1890, when they filed it,
having in the meanwhile, on the 27th of February, 1890, pro—

De Grauw *v.* Mechan.

·ceeded to a sale under the *fieri facias* in the hands of the sheriff :and bought in the property, which appears to be worth $7,500, for the sum of $1,650, and having thus secured the right, title :and interest of the defendant John Mechan in these premises, then proceeded with this suit, and now ask the court for its de- ·cree, the only effect of which can be to confirm the title which they have thus obtained.

Not only have the complainants purchased at a grossly inade- ·quate price, but the sale of the right, title and interest of John Mechan in property, the title to which was in the name of Mary Mechan, gave complainants an undue advantage, if the convey- .ances now attacked are liable to be set aside as against them. No regular examination of the chain of title would give any intima- ·tion of the infirmity now set up. The defect was not of any link therein. It exists, if at all, from Mechan's assumption, years before, of a mortgage upon entirely different property. The com- plainants were enabled to bid with the secret assurance, if the .transfer to the wife could be set aside as to them, that they were ·to have an unencumbered title, while others would bid for the .right of one who apparently had no interest. Such a procedure ·undermines the very foundation of judicial sales, that there shall be full, fair and free competition. Their object is not only to ·secure to the plaintiff the amount due on the judgment, but that ·the property shall bring all that such competition will produce :for the benefit of others in interest. To secure this, all should ·have an opportunity, at least, to have equal knowledge of the ·state of the title. They are charged, of course, with such in- formation as a search of its regular chain could disclose, but not ·of a point of attack, which could only be discovered by one en- .gaged in the questionable practice of wide-range examination for .purposes of speculation.

In the case of *Smith* v. *Vreeland, 1 C. E. Gr. 198,* the com- iplainant was an execution creditor of one Scott, and filed a bill ·to set aside a fraudulent conveyance by which the legal title to ·the real estate of the debtor was transferred to the defendant in :the suit in chancery.

De Grauw *v.* Mechan.

The complainant, acting on the assumption that the convey-
ances which he sought to avoid were null and void, had proceeded
to a sale under an execution at law, although the title had been
conveyed by the defendant in the execution, and became the pur-
chaser for a very inadequate price. The chancellor, in stating
this as the position (at *p. 204*), says : " He now asks this court,
by its decree, to declare the previous conveyances fraudulent, and
thus confirm his title. The balance due on his judgments at the
time of the sale amounted to about three hundred dollars. The
value of the property, according to the testimony of his witnesses,
was three thousand dollars, exceeding by about thirteen hundred
dollars the amount of the encumbrances upon it. All that the
complainant can ask in equity is that his debt shall be paid. If
his legal rights are more extensive, they must be enforced at law
without the aid of this court. Though he has acquired a legal
advantage over the prior judgment of the defendant, there is no
reason why he should be permitted to speculate upon that advan-
tage at the expense of the defendant." There were equities in
that case which the chancellor adjusted by the decree.

All these complainants had a right to ask this court to do was
to secure the payment of the deficiency due. If they had pro-
ceeded regularly and waited the determination of this case, the
rights of all could have been protected. But they have gone on
with the execution, and bought the interest of one of the defend-
ants in property worth $7,500 for $1,650. If the insistment,
that the conveyances attacked are fraudulent and void as against
them, is correct, they have secured the legal title, and can enforce
it at law. *Mulford* v. *Peterson, 6 Vr. 127, 133 ; Mulford* v.
*Tunis, 6 Vr. 256 ; Phelps* v. *Morrison, 10 C. E. Gr. 533, 540.*
For this court, by its decree, to confirm the title which they have
thus acquired, after so long a delay, and for such an inadequate
consideration and under such circumstances, would be unjust and
inequitable. They must be left to their remedy at law. This
court does not extend its aid to the enforcement of stale or in-
equitable demands, and should not willingly give encouragement
to members of the profession who dig and delve in the records
of the past in search of sources of possible practice and profit in

the remains of buried and forgotten litigation. It is but just to the counsel for the complainants to say that the evidence in the cause does not directly implicate him in the practice which is herein criticised and condemned, and that he disclaims any responsibility for and connection therewith.

The bill must be dismissed, with costs.