### BLYER *v.* MONHOLLAND and others.

Where one purchases land which is subject to a bond and mortgage executed by his grantor, and in his deed assumes and agrees to pay the mortgage ; he is liable to his grantor to pay the same as a part of the price or consideration of the land.

As between him and the mortgagor, the latter thereupon becomes a surety for the former, in respect of the mortgage debt.

The obligation of the purchaser to pay the debt, enures in equity to the benefit of the mortgagee ; and he may enforce it against the purchaser, to the extent of the deficiency, in a bill to foreclose his mortgage.

March 8, 10 ; April 5, 1845.

On the 23d of November, 1835, Samuel Fitz Randolph being indebted to the complainant by his bond of $2500, executed to the latter a mortgage on a lot in the city of New York, to secure its payment.

On the 1st of February, 1839, Fitz Randoph sold the lot to the defendant, Monholland, for $2800, and conveyed the same to him by a deed of that date. The deed was delivered to and accepted by Monholland, and contained the following clause : " Subject however to a mortgage made to the said John Blyer, by the said Samuel and Huldah his wife, for twenty-five hundred dollars, ($2500) dated the twenty-third day of November, 1835, and recorded in the office of register of the city and county of New York, in liber 195 of mortgages, page 259, as by reference thereto will more fully appear; (which the said party of the second part hereby assumes and agrees to pay.)"

Monholland paid the balance of the consideration, $300, to Fitz Randolph at the execution of the deed. He went into the

immediate possession of the lot, and paid interest to the complainant on his mortgage for several years.

In a bill to foreclose the mortgage, filed in 1844, these facts were stated, and the complainant claimed to make Monholland liable for any deficiency there might be in the collection of the mortgage debt. The latter put in an answer, stating that he bought only the equity of redemption in the lot, subject to the mortgage, and that he was not liable to pay any of the debt. He also set up the statute of frauds as a bar to any supposed liability by reason of his assumption of the mortgage.

He introduced some testimony in support of his allegation as to the purchase, which is alluded to in the opinion. The cause was heard on the pleadings and proofs.

*D. P. Hall*, for the complainant.

*J. T. Brady*, for the defendant Monholland.

THE ASSISTANT VICE-CHANCELLOR.—It is sufficiently established by the testimony, that the deed from Fitz Randolph to Monholland, expressed their agreement in relation to the mortgage in question.

The deed comes from the possession of the grantee, containing the assumption of the mortgage. This throws upon him the burthen of proving that the clause was interpolated, and that he did not in fact agree to pay the mortgage.

Some testimony has been taken on this point, and it establishes rather than overthrows, the effect of the deed. Fitz Randolph says that he sold the lot to Monholland for $2800; and that the latter paid him $300 of the price, and agreed to see the mortgage of $2500 paid. The deed corresponds precisely with this agreement; and if it were true that Monholland heard the deed read before the assumption was inserted, and never heard it read afterwards, it would not do away with the fact that such an agreement was made. But there is no proof that he knew any thing about the contents of the deed before it was delivered to him duly executed, and with the clause inserted. Nor is there proof that he did not at the time of the delivery of the deed, know its con-

tents fully. The law implies such knowledge from his accep-
tance of the instrument and acting under it. The fact that his
daughter who is his principal clerk, never read this portion of it
to him, is not sufficient evidence to rebut that legal presumption.

The complainant's mortgage was a part of the consideration
which Monholland agreed with Fitz Randolph, to pay for the
land. It was a part of the price; and the latter being indebted
in that amount to the complainant, and the debt being a lien,
Monholland agreed with Fitz Randolph to pay such amount to
to the complainant. It was therefore a debt due from M. to Fitz
Randolph, payable by the arrangement between them, to the
complainant.

It was a simple contract debt, for lands sold and conveyed by
the one to the other. The effect of this arrangement in equity,
as between them, was to make Fitz Randolph the surety of Mon-
holland, in respect of the debt due to the complainant.

As between them and the complainant, it is immaterial
whether he was to regard the relationship of principal and surety
between them. It sufficed for him that he held this mortgage debt
against Fitz Randolph, and that the latter had obtained the obli-
gation of Monholland to himself, to discharge that debt. This
obligation enured in equity to the benefit of the complainant.
The case of *Curtis* v. *Tyler and Allen*, (9 Paige's R. 432,) is di-
rectly in point.

The obligation is not enforced, as being made by Monholland
to the complainant, for the payment of Fitz Randolph's debt; but
as a promise by M. to Fitz Randolph to pay to him $2500, by pay-
ing that sum to the complainant in discharge of his debt; which
promise the complainant, as the mortgage creditor of Fitz Ran-
dolph, is equitably entitled to lay hold of and enforce, under
the equity of the provision in the revised statutes relative to the
foreclosure of mortgages in chancery. (2 R. S. 191, § 154.)

The counsel for the defendant, in an able and ingenious argu-
ment, contended that the promise of Monholland was to answer
for the debt of another, and the deed not being signed by him,
the promise was void by the statute of frauds. In my view of
the case, the point is inapplicable.

The complainant is entitled to a decree for the foreclosure and

sale of the lot mortgaged, and that Monholland pay the deficiency of his debt and costs.