## CROWELL *vs.* CURRIER.

1. The principle that if one person makes a promise to another, for the benefit of a third party, that third person may maintain an action on it, applies to simple contracts, not to contracts under seal.

2. In ordinary cases, a mortgagee does not, by force of a contract of assumption of the mortgage, acquire a right of action against a purchaser of the mortgaged premises, but the benefit flowing to him from the contract is limited to a right to be subrogated to the rights of his debtor. He stands in his debtor's rights, and may appropriate, to the satisfaction of his mortgage, any security held by his debtor for its payment; he can, therefore, only have a personal judgment against the purchaser for his debt, when the mortgagor holds an obligation which will support such judgment.

3. Where parties have made a contract which will, either directly or indirectly, benefit a mere stranger, they may, at their pleasure, abandon it, and mutually release each other from its performance, regardless of his interest, unless the parties, with knowledge that he is relying on the contract, suffer him to put himself in a position from which he cannot retreat without loss in case the contract is not performed; then he may ask to have the contract performed, so far as it touches his interests.

4. A holder of a mortgage is not entitled to a decree for deficiency against a purchaser of the mortgaged premises, by virtue of his contract of assumption of the mortgage, where, before the mortgage fell due, the purchaser re-conveyed to the mortgagor, who, by his deed, assumed the

mortgage; the holder of the mortgage having become the owner of it before the covenant of assumption, without reliance upon it as part of his security, and his conduct not appearing to have been, in the slightest degree, influenced by it.

Final hearing on bill, answer, and proofs.

*Mr. Oscar Keen* and *Mr. E. B. Crowell,* (of New York,) for complainant.

*Mr. E. Q. Keasbey,* for Hospital of St. Barnabas.

THE VICE-CHANCELLOR.

The controversy in this case is confined to a single question : Is the Hospital of St. Barnabas liable for deficiency, in case certain mortgaged premises are not sold for a sum sufficient to satisfy the mortgage in suit? The mortgage was made by John A. Currier to William D. Voorhees and Jarvis M. Andrews, March 13th, 1872, to secure the payment of $5000 March 13th, 1874, with interest, payable semi-annually. The complainant obtained it by assignment, March 4th, 1873. On the 1st day of April, 1873, the mortgaged premises were conveyed by Currier to the Hospital of St. Barnabas, subject to the complainant's mortgage, which they, by the deed, assumed to pay. On the 21st day of October, 1873, and before the mortgage fell due, the hospital re-conveyed the premises to Currier, subject to the mortgage, which he, by the deed to him, assumed to pay. Suit was brought November 15th, 1875.

The fairness of the re-conveyance to Currier is not questioned.

It must be conceded, Currier had no right of action, legal or equitable, against the hospital, when the suit was brought. By his covenant in the conveyance, he became the principal debtor again, the mortgage debt became his obligation, exclusively, and the covenant of the hospital, so far as it gave him any right, was abrogated. I think it must also be conceded,

that unless the covenant of the hospital invested the complainant with a right of action, which, the instant it accrued, passed beyond the control of the contracting parties, and ceased to be dependent on the validity of the contract as between them, the complainant is in no better plight in this suit than Currier would be. In other words, if his right to relief is purely derivative, and to be wrought out through rights and obligations resting in his debtor, he stands in the shoes of his debtor, and, in the absence of fraud, can take nothing his debtor could not take.

The right of a mortgagee to hold the purchaser .of the equity of redemption for deficiency, who assumed the payment of his mortgage by covenant to the mortgagor, does not rest on the theory of a contract between the purchaser and mortgagee, upon which an action at law may be maintained, but stands exclusively, according to an almost unbroken line of adjudications, on the ground that the covenant of the purchaser is a collateral security obtained by the mortgagor, which, by equitable subrogation, enures to the benefit of the mortgagee. *Klapworth* v. *Dressler*, 2 *Beas.* 62; *Jarman* v. *Wiswall*, 9 *C. E. Green* 269; *Garnsey* v. *Rogers*, 47 *N. Y.* 237; *King* v. *Whitely*, 10 *Paige* 467; *Curtis* v. *Tyler*, 9 *Paige* 434; *Blyer* v. *Monholland*, 2 *Sandf. Ch.* 480; *Trotter* v. *Hughes*, 12 *N. Y.* 74. The remedy of the mortgagee is purely equitable. He has no remedy at law. This point was expressly ruled in Klapworth *v.* Dressler. *Burr* v. *Beers*, 24 *N. Y.* 178, declares a different rule. It was there held a mortgagee may maintain an action at law, before foreclosure, on the covenant made to the mortgagor by the purchaser of the equity of redemption to pay his mortgage. In the language of DENIO, J., the judgment of the court was put distinctly "upon the broad principle, that if one person makes a promise to another, for the benefit of a third person, that third person may maintain an action on it." This principle, in its application to simple contracts, has given rise to a great contrariety of judicial opinion. So far as it applies to simple contracts, it must be

regarded as settled, in this state, for the present. *Joslin* v. *N. J. Car Spring Co.*, 7 *Vroom* 146. But it has never been understood to apply to contracts under seal, and Burr *v. Beers* is, so far as I know, the first attempt in that direction. The rule that an action at law for breach of a contract under seal, can only be brought in the name of a party to the instrument, and that a third person, who is not a party to it, cannot sue on it, though it appears to have been made expressly for his advantage, is so ancient, and has been so generally adhered to, that it must be regarded as axiomatic, and beyond the power of the courts to alter or destroy. 1 *Chitty on Con.* (11 *Am. ed.*) 77; *Johnson* v. *Foster*, 12 *Metc.* 167; *Mellen's Adm'x* v. *Whipple*, 1 *Gray* 317; *Millard* v. *Baldwin*, 3 *Gray* 486. The legal nature of contracts of assumption, when expressed in deeds, is no longer open to dispute in this state. They have been declared to be valid covenants, for breach of which an action of covenant may be maintained. *Finley* v. *Simpson*, 2 *Zab.* 311. So completely is the assumption of the purchaser regarded as a contract with the grantor alone, that unless the grantor is personally liable for the mortgage debt, the promise of the purchaser is held to be a *nudum pactum*, and of course, without efficacy in favor of either the grantor or mortgagee. *King* v. *Whitely*, 10 *Paige* 465; *Trotter* v. *Hughes*, 12 *N. Y.* 74.

It would seem to be clear, then, that in ordinary cases the mortgagee does not, by force of the contract, acquire a right of action against the purchaser, but the benefit flowing to him from the contract is limited to a right to be subrogated to the rights of his debtor. He stands in his debtor's rights, and may appropriate, to the satisfaction of his mortgage, any security held by his debtor, for its payment; he can, therefore, only have a personal judgment against the purchaser for his debt, when the mortgagor holds an obligation which will support such judgment. His right is simply the right of substitution, permitting a new creditor to take the place of an old one, and allowing the new to succeed to the rights of the old.

The adoption of the other view would lead to the establishment of this anomalous and unjust principle, that a person shall have a right of action on a contract to which he is not a party but a stranger, which was not made for his benefit, for which he gave no consideration, and which never influenced his conduct in the slightest degree.

In this case, the complainant was entitled to the right of subrogation, to be put in the place of his debtor, and invested with the rights his debtor held at the time the action was brought. The fact that the complainant held the unexercised right to ask, by suit, to be subrogated to the rights of the mortgagor under the contract, did not put it out of the power of the contracting parties to abrogate the contract. Where parties have made a contract which will, either directly or incidentally, benefit a mere stranger, they may, at their pleasure, abandon it, and mutually release each other from its performance, regardless of his interests, unless the parties, with knowledge that he is relying on the contract, suffer him to put himself in a position from which he cannot retreat without loss, in case the contract is not performed; then he may ask to have the contract performed, so far as it touches his interests, not, however, in virtue of any right he acquired by force of it, but on the new and independent equity springing from their conduct and his action induced by it. 2 *Spence's Eq. Jur.* 280, 281; *Addison on Con.* (7 *ed.*) 25; *Hill* v. *Gomme*, 1 *Beav.* 540; *S. C.*, 5 *Myl. & Cr.* 250; *Colyear* v. *Mulgrave*, 2 *Keen* 81; *Jeffreys* v. *Jeffreys*, 1 *Cr. & Ph.* 141. Even where a debtor conveys his property to a trustee to pay his debts, his creditors not being parties to the transfer, and not having directed or assented to it, nor changed their position in consequence of it, they have no right to ask for its enforcement. *Bill* v. *Cureton*, 2 *Myl. & K.* 503; *Garrard* v. *Lauderdale*, 3 *Sim.* 14; *Colyear* v. *Mulgrave*, 2 *Keen* 94, n. 1. The reasoning on which these cases proceed is, that the transfer having been made solely with a view to the benefit of the debtor, without the knowledge of his creditors, and without prejudice to their rights, they ought not to be permitted to assume the

character of *cestuis que trust,* if they please, and defeat an arrangement to which they are not parties and which does not interfere with their rights.

The complainant became the owner of the mortgage before the covenant of the hospital was made; he did not purchase, relying upon it as part of his security, nor does it appear that his conduct since has been, in the slightest degree, influenced by it. Standing, then, simply in the rights of his debtor, with no equity except that flowing through his debtor, and his debtor being stripped, by his own act, of all shadow of claim, I think it is clear the complainant is not entitled to a decree for deficiency against the corporate defendant.