ELIZABETH S. BIDDLE et al.

*v.*

J. HOWARD PUGH et al.

[Filed March 5th, 1900.]

1. When lands have been conveyed to successive grantees (subject to a debt secured by bond and mortgage), each of whom by covenant in his deed assumes to pay the mortgage debt as part of the consideration of his purchase, the payments of interest made on that debt by the successive grantees are referable to the bond held by the mortgagee, and operate to satisfy the interest due on that bond, and thereby to stay the running of the statute of limitations against an action on the bond.

2. Equity will enforce their undertakings against such successive grantees whose covenants form a chain of liabilities to pay the mortgage debt by decreeing payment of a deficiency in the proceeds of the sale of the mortgaged premises to satisfy the mortgage debt.

3. It is not necessary that all of the succeeding covenantors shall be parties to the bill, though all are proper parties.

On bill, answer and stipulation as to the facts.

This cause was heard on bill, answer and stipulation that a narration of facts submitted should be taken to be true as if proven.

The bill is filed by the holders of a bond made by one Jesse S. Adams on October 7th, 1872, conditioned for the payment of $3,000, with interest, in one year from date, the payment of which was secured by a mortgage of like date, also made by Adams upon lands in the city of Burlington. The mortgage was duly recorded on October 7th, 1872. On February 28th, 1876, Adams delivered a deed conveying the mortgaged premises to the defendant J. Howard Pugh for the consideration of $6,000. Pugh paid $3,000 and accepted the deed, which contained this covenant: "Subject to a mortgage of three thousand dollars, which sum forms part of the consideration above mentioned, and the said J. Howard Pugh assumes and agrees to pay."

The defendant Pugh afterwards conveyed the premises to one Hannah Dill, and following this were several successive conveyances. By these deeds each succeeding grantee in turn assumed the said debt in like manner as did the defendant Pugh.

On February 12th, 1898, the mortgaged premises were sold on foreclosure of the complainant's mortgage, and on the purchase-price there was a deficiency of $1,248.84 to pay the mortgage debt.

The complainants allege that the defendant J. Howard Pugh is bound in equity, under his above-quoted covenant, to pay to them the above stated deficiency and pray a decree accordingly.

The defendant admits the covenant, but contends that it was only an agreement to indemnify Adams, the obligor in the bond accompanying the mortgage, against payment of the debt, in case he (Adams) should be compelled to pay the same; that for more than twenty years next preceding the filing of the bill neither he nor Adams have paid anything on account of either the principal or interest secured to be paid by the mortgage; that by the statute and by the law of the land, neither of them is now indebted on the bond, and neither ought to be compelled to pay the sum claimed to be due, and that the defendant is not indebted to the complainant on his said covenant of indemnity.

*Messrs. Gilbert & Atkinson*, for the complainants.

*Mr. Howard Flanders* and *Mr. Mark R. Sooy*, for the defendants.

GREY, V. C.

The equity which supports the recovery by a mortgagee of a deficiency after sale of the mortgaged premises, from a subsequent purchaser, who has covenanted with the mortgagor to pay the mortgage debt, does not arise because of any right, originally, in the mortgagee. He is allowed to go directly as a creditor against the person ultimately liable, in order to avoid circuity of action, whereby the mortgagor, if himself compelled to pay, would be forced to seek relief against the person who

had indemnified him. The equity upon which his relief depends is the right of the mortgagor against his vendee, to which the mortgagee is permitted to succeed by substituting himself in the place of the mortgagor. *Crowell* v. *St. Barnabas, 12 C. E. Gr. 656.* The mortgagee is only entitled to such remedy as the mortgagor himself has against the purchaser when the bill is filed, and his right is subject to such action as the mortgagor and purchaser may have taken to modify or rescind the contract. *Crowell* v. *St. Barnabas, supra.* In this case there is no pretence that there has been any action by the mortgagor and the defendant which has in any way released or rescinded the contract between them. All that is claimed is that neither the mortgagor nor his grantee, the defendant, has made any payment of interest for sixteen years.

The nature of the complainant's right having thus been defined by the court of appeals, it only remains to ascertain whether the mortgagor had, when the bill in this cause was filed, a right to enforce against the defendant the covenant to pay the mortgage debt, into which he entered by the acceptance of the deed. If he had such a right, then the complainants, as mortgage holders, may enforce it in equity though not at law. *Klapworth* v. *Dressler, 2 Beas. 66.*

The defendant agreed with Adams that he would pay the complainant's mortgage as part of the consideration for the conveyance of the mortgaged premises to him. That he has not paid it is beyond dispute.

It is entirely settled in this state that the purchaser of lands subject to mortgage, who agrees to pay the mortgage debt, becomes, in the consideration of a court of equity, as between himself and the vendor, the principal debtor, and the liability of the vendor, as between the parties, is that of surety. *Klapworth* v. *Dressler, 2 Beas. 62.* The securities which a surety holds for his own indemnity will be applied in equity for the benefit of the creditor to whom the debt is owing. For this reason decrees for deficiency in foreclosure suits have been made against subsequent purchasers, who, by assuming payment of the mortgage debt, have become principal debtors as between

Biddle *v.* Pugh.

themselves and their grantors. *Klapworth* v. *Dressler, 2 Beas.
64. Klapworth* v. *Dressler* has been approved whenever since
cited. *Hoy* v. *Bramhall, 4 C. E. Gr. 563; Pruden* v. *Williams,
11 C. E. Gr. 211; Crowell* v. *St. Barnabas, supra.*

The mortgagor being liable to the mortgagee on the bond, an
equity arises that the mortgagee may substitute himself in the
place of the mortgagor, to enforce against the subsequent pur-
chaser the covenant which the mortgagor has taken for his in-
demnity. To support the claim of the mortgagee, two conditions
must exist at the time he files his bill—*first*, he must at that
time have a right to collect the deficiency from the mortgagor;
and *second*, the mortgagor must have the right to reimburse
himself by enforcing against the subsequent purchaser the cove-
nant which he had given for the payments of the mortgage
debt.

In this case the defendant insists that the mortgagor is not
liable to the mortgagee for any deficiency on the bond, because
he says that for more than sixteen years before the bill was filed
neither he nor the mortgagor has paid anything on the principal
or interest of the bond; that the mortgagee cannot recover from
the mortgagor on the bond, for the reason that the statute of
limitations may be enforced against any claim on the bond, and
that consequently the defendant's collateral contract of indem-
nity by his covenant has no further efficacy, as there can be no
loss which it undertakes to make good.

The stipulation as to the facts shows that it is true that neither
the defendant nor the mortgagor have made any payments of
either principal or interest on the bond for more than sixteen
years next before the filing of the bill. But the additional
stipulation also shows that each of the successive owners of the
mortgaged premises made, in the deed which he accepted, the
same covenant to pay the mortgage debt for himself, which
the defendant had made for himself, and it also appears that
each successively paid the interest on the mortgage up to the 1st
day of April, 1896, which is within two years of the filing of
the bill in this cause.

That the non-payment of either principal or interest on a

sealed bond for a period of sixteen years may be set up at law in an action on the bond as a complete bar, is plainly declared upon the face of the statute of limitations, section 6. Though the statutes of limitations do not by their terms apply to courts of equity, yet equity will follow the law if the question arises on a legal demand, and this not so much by way of analogy as positively in obedience to the statute. *Story Eq. Jur.* § *549.*

It being shown that neither the mortgagor nor the defendant have made any payment on the bond within sixteen years before the bill was filed, is that a bar to any suit on the bond against the mortgagor, and thus a discharge of the defendant's covenant of indemnity? Can the payments of interest by the successive grantees and covenantees be so imputed to the mortgage debt that they have kept alive the complainant's right to recover against the mortgagor on the bond for the deficiency, and consequently the mortgagor's right to enforce the defendant's covenant to pay the mortgage debt?

The question whether payments made by persons liable to pay a mortgage debt other than the mortgagor himself will take a case out of the statute of limitations, has been exhaustively considered in England. The fortieth section of *3 and 4 W. & M. ch. 27,* requires the payment in order to stay the statute to be made " by the person by whom the same shall be payable or his agent." In *Chinnery* v. *Evans, 11 H. L. Cas. 129,* the payment which it was claimed prevented the running of the statute was made by a receiver in charge of the mortgaged premises. Lord Westbury held that the receiver was a person who was liable to pay the principal or interest in behalf of the mortgagor, and that payments of interest by him took the case out of the statute. The principle involved was held to be the same when the question arose under the statute of *1 Vict. ch. 28,* which does not contain the above-quoted words, specifying by whom payment should be made. But notwithstanding the absence of the words, it has always been held that no stranger to the parties and to the contract could, by paying, prevent the operation of the statute. The party paying must be some person who is bound to pay the principal or interest of the mortgage money. *Harlock* v. *Ash-*

berry, 19 Ch. Div. 546. In re Hollingshead, 37 Ch. Div. 651, payment of interest on the testator's contract debt by a devisee for life was held sufficient to keep that debt alive against all parties interested in remainder. In re Frisby, 43 Ch. Div. 117, Lord-Justice Fry considers the question whether a payment by a principal takes the case out of the statute as against the surety. He holds that a payment satisfying the statute is made whenever there is "a render of money to a person entitled to receive it by a person liable to pay it." It is usual for the principal to pay interest, and it is contrary to good sense and common understanding that while he was doing so the statute should run in favor of the surety. In this state, as above shown, equity regards each grantee who makes such a covenant as is above quoted as the principal debtor, and the grantor becomes a surety only. Klapworth v. Dressler, 2 Beas. 63.

In re England, L. R. 2 Ch. 100 (1895); S. C. on appeal, 826, a settlor, who covenanted to pay a principal sum and interest, charged lands with the payment. The lands afterwards came into the hands of one who was under no liability to pay the interest, and did not pay it. The trustees of the fund sought to enforce the charge not only against the lands, but against the personal estate of the covenantor. The statute of limitations was set up as a bar, and it was held by Mr. Justice Kekewich, below, and by all the lord-justices on the appeal (citing In re Frisby, 43 Ch. Div. 106), that where there was no liability on the part of the holder of the lands to pay the interest reserved by the covenant, the statute would run to prevent recourse to the covenantor's personal estate. The trend of all the opinions was that where there was such a liability, and payments of interest in accordance with it, the running of the statute to protect the personal estate would be stayed. In Lewin v. Wilson, 11 App. Cas. 639, a mortgage was given by W. to secure the debt of H., H. being bou d to pay both the debt and interest. He did pay the interest, and it was held that though he was neither a party nor the agent of a party, his payments were sufficient to stay the statute, since they were made by a person who, under the terms

of the contract, was entitled to pay, and from whom the mortgagee was bound to accept payment.

In England, the same rule as to payment of interest by one liable to pay it, though not the original obligor, is applied when the statute of limitations is set up in an action on the bond or other original contract of debt for the recovery of a deficiency. In *Forsyth* v. *Bristowe, 8 Welsby, H. & G. *716,* an action was begun in 1852 on a covenant made in 1830. The very question was presented which is now under consideration, whether a payment of interest by an assignee of the equity of redemption, who had covenanted to pay it, was such a payment as would take the case out of the statute of limitations. It was argued that the payment of interest by the assignee of the equity of redemption was not sufficient to take the case out of the statute; that the payment must be made either by the mortgagor or by his agent. Baron Parke held that the section of the statute of limitations invoked did not in express terms require the payment to be made by the party liable, or by his agent, but if the statute implied that, then the assignee of the equity of redemption, who covenanted to pay, is sufficiently an agent of the party liable for that purpose.

In *Dibbs* v. *Walker, L. R. 2 Ch. 429 (1893),* a suit for a deficiency was begun, in 1893, on a covenant made in 1831, by which the settlor, who was the owner of an equity of redemption, covenanted to pay the mortgage debt. He then made a settlement in favor of a tenant for life, under which she covenanted to pay the interest. She did pay it for over sixteen years. On her death the mortgaged premises were sold, but did not satisfy the mortgage debt. Suit was begun, in 1893, on the covenants made by the settlor, in 1831, to recover the deficiency. The statute of limitations was set up as a bar, it being contended that the payments of the life tenant should be referred solely to her own covenant. But Mr. Justice Chitty refused to accept the proposition, and held that her payment kept the right of action alive on the covenant of the settlor, made in 1831, declaring that *Forsyth* v. *Bristowe* was an authority upon the point which had never been questioned.

In *Blue* v. *Everett, 11 Dick. Ch. Rep. 457*, a very recent case in this state, there was an attempted foreclosure of a mortgage when neither the obligor in the bond nor anyone claiming under him had in any way recognized the mortgage debt for over twenty years before the filing of the bill. The defendant set up the statute of limitations. In the entire absence of any recognition of the mortgage debt, the case differs radically from that now in hand, where the successive grantees each covenanted with his grantor to pay the mortgage debt, and have paid interest on it up to within two years of the filing of the bill. But upon one point, the application of interest payments, it throws some light upon the matters here under consideration. In the case cited, the learned Mr. Justice Dixon, who delivered the opinion of the court of appeals, discusses the nature of payments on account of the debt, made by a mortgagor, and declares that at law payments on account of a debt secured by bond and mortgage are not to "be deemed rent or in any sense the price of possession, but would be referred solely to the personal obligation held by the mortgagee." It is in the law courts that action on the bond would be enforced as between the holder and the mortgagor who gave it. Under this ruling, payments of interest even at law are deemed not to be a satisfaction for the enjoyment of the mortgaged premises, but are referred solely to the personal obligation—the bond—held by the mortgagee. When so referred they must operate to postpone the expiration of the statute of limitations as a bar to an action on the bond. To what other obligation can they rightfully be related? They are not payments on the covenants of the grantees, for those covenants are not original undertakings, but are agreements to pay an already existing debt. They have none of the qualities of a rent or a compensation for the use of the mortgaged premises, because, as is shown in *Blue* v. *Everett*, the grantee does not hold the land under the mortgage.

That the attitude of the mortgagor, obligor in the bond, was that of assent to and acceptance of the payments of interest made by the subsequent grantees, as applicable on account of the mortgage debt, may be shown by an illustration. The con-

tention of the defendant is that the payments by subsequent grantees, after the last the defendant made in 1879, cannot be held to have been made on the bond, and therefore the obligor must be held to be discharged by the sixteen-year statute of limitations.

Suppose, in 1889, after the subsequent grantees had for ten years paid the interest, the holder of the bond had sued the obligor and claimed the principal of the bond and the ten years' interest from him, would not the obligor, while admitting that he owed the principal, have refused to pay the ten years' interest and have replied, and successfully, too, that the interest for those ten years had already been paid by the subsequent grantees?

Suppose the grantees, who succeeded Dr. Pugh in the ownership of the land, had tendered to the bondholder payment of the debt secured by the bond, would it not have been a good tender and have stopped the interest? Suppose the holder of the bond and mortgage had recovered the amount of the mortgage debt from any of the subsequent grantees, on his covenant to pay it, would not the payment by such a covenanting grantee have discharged the obligation of the bond?

In this very case the mortgaged lands have been sold and the proceeds applied in part satisfaction of the debt created by the obligor in the bond. Irrespective of the statute of limitations, can there be a question that these proceeds were well applied and reduced the amount of the obligor's debt due upon the lands?

If the payments by the subsequent grantees were efficient to reduce the amount of interest which came to be due on the bond or to satisfy the principal debt, after Dr. Pugh had conveyed away the mortgaged premises, it is hard to see why they should fail, after that time, to stay the operation of the statute of limitations. The last of these interest payments by subsequent grantees, who covenanted to pay the debt, was made, as stated, within two years before the filing of the bill.

The crediting upon the bond of payments of interest made by subsequent grantees on account of the mortgage debt was in accordance with their several covenants and with the invariable

Biddle *v.* Pugh.

practice followed by all who receive such payments. It would introduce a new mode of doing business and disturb many established investments were it held that interest payments made by subsequent purchasers, who had contracted to pay the mortgage debt, had no application to it, and that all the while that the yearly interest was being annually paid in recognition of the debt and received and credited on the bond, the statutes of limitations were insidiously cutting off the right to collect the principal. The subsequent purchaser, who agreed with the mortgagor or with his grantee to pay the mortgage debt, received an estate in and possession of the mortgage lands as a consideration for such agreement. Each grantee was, by his covenant, put in privity of obligation as to payment of that debt with every other person who was in anywise bound to pay it. The grantee's payments of the interest on that debt satisfied it to the extent of those payments, in accordance with his covenant to pay it and to the benefit of the parties who also were obligated to pay it. The payments were " renders of money to a person entitled to receive it by a person liable to pay it " and operated as payments on account of the debt and to keep it alive. Equity will recognize and enforce obligations of persons ultimately liable, so kept alive, although they may not, as between each other, be immediate contractors.

By taking the covenant from Dr. Pugh, Adams agreed that Pugh should pay the debt, and each payment of interest made by the latter operated as a payment to postpone for sixteen years thereafter the operation of the statute of limitations as a defence to the bond. Each successive grantee became in the same way personally liable in equity for the payment of the debt by his covenant in the deed which he accepted. When in turn he became a grantor he exacted from his grantee a like covenant, and the new party undertook the payment of the debt as a primary duty, and thus became in equity the principal debtor, the preceding covenantors becoming sureties. Each of these principal debtors had a right to make the payments of interest on the debt as they fell due, and the running out of the statute of limitations must be computed from the date of the last of

them, which is admitted to have been within two years before the filing of the bill in this cause.

Against the successive grantees whose covenants form the chain of liabilities to pay the mortgage debt, it is the province of a court of equity to enforce those covenants in order to avoid circuity of action, and the party who satisfies the debt may, if necessary, have his remedy over against those who are liable to him. The grantee covenantors, beyond the defendant Pugh, have not been brought in as parties, but this has not been made the subject of criticism either in the pleadings or the arguments. For the relief which the complainant seeks from the defendant they are not necessary parties. In *Pruden* v. *Williams, 11 C. E. Gr. 212,* the obligor in the bond was not a party, but only the succeeding covenantors, in a bill to recover a deficiency, which was sustained. *Burr* v. *Beers, 24 N. Y. 178.*

The authorities above quoted justify the staying of the operation of the statute by payments of interest made by those other than the original contractor, who have undertaken to pay the same debt, upon principles analogous to those declared in the celebrated case of *Whitcomb* v. *Whiting, Doug. 652,* to the effect that one joint debtor may, by acknowledgment of the debt, postpone the operation of the statute of limitations. This case was followed in many of the states, notably New York, for many years, but has in most of them been overruled. It has been accepted in this state for reasons fully stated in *Merritt* v. *Day, 9 Vr. 32,* and unanimously supported by the court of errors in *Casebolt* v. *Ackerman, 17 Vr. 172.*

The only direct authority, contrary to the views above stated, is *Trustees, &c.,* v. *Smith, 52 Conn. 434,* where Chief-Justice Park, in a suit against the original obligor, where grantees had assumed payment of the mortgage debt, and had paid the interest, sustained a plea of the statute of limitations, upon the ground that the payments of interest by the successive grantees were on their own account to keep alive the equity of redemption, and not on account of the mortgage debt. In this the learned chief-justice is in opposition to the above-quoted declaration of our court of appeals in *Blue* v. *Everett, ubi supra,* as to the relation

of such payments. He further states that the assumption of the mortgage debt did not increase the remedies of the holder of the mortgage. This view conflicts with *Klapworth* v. *Dressler*, *ubi supra*, which declares that the assumption of the mortgage debt entitles the mortgagee to sue the assuming grantee in equity for the recovery of that debt. The learned chief-justice cites but one authority, and that does not appear to be applicable to the case he was considering. His decision is also very difficult to reconcile with another which he made in *Tuttle* v. *Armstead, 53 Conn. 175,* where an agreement by a subsequent grantee to pay a mortgage debt was enforced against the bar of the statute of limitations on payments of interest by him, though the mortgage itself was void. In the first of these decisions it was held that interest payments by subsequent grantees were made solely to keep alive the equity of redemption, and that they could not save the debt secured by the mortgage from the operation of the statute of limitations. In the latter case, interest payments by a grantee who acquired the property subsequently to the mortgage, and who covenanted to pay the mortgage debt, were held to be made on the indebtedness which he had assumed to pay, and not on his own private account to prevent a foreclosure of the land, and, by so applying the payments, the indebtedness which he assumed to pay was saved from the operation of the statute.

*Princeton Savings Bank* v. *Martin, 8 Dick. Ch. Rep. 463,* is also cited as sustaining the proposition that payments by subsequent owners of the mortgaged premises cannot be imputed to the mortgagor so as to bar the statute. But the learned vice-chancellor who heard that cause in this court declared as to the facts of the case that it " nowhere appears that the grantees or any of them assumed the payment of the money secured by this mortgage, consequently the only person liable, if anyone be, on the bond in question, is the defendant," the obligor. It was not a case, therefore, where the assumption of the payment of the mortgage debt by the grantee had put him under such an obligation as to relate his payments of interest to that mortgage debt which he had agreed to pay, and postpone the running of

the statute.  Whatever force the case cited might otherwise have is somewhat lessened by the fact that it was reversed on appeal (*9 Dick. Ch. Rep. 437*), though the reversal was put upon the ground that the complainant had a full remedy at law, and without discussion of the views expressed in this court.

I will advise a decree that the complainants are entitled to recover from the defendant the amount of the deficiency, with costs.