By this bill the complainant seeks a money decree against the defendants for a deficiency arising out of a suit to foreclose a mortgage executed by the defendant Multiple Realty and Construction Company on July 1st, 1929. The bond which said mortgage was given to secure was executed by the defendant Multiple Realty and Construction Company, George Grossman and Irving Rubin. The defendant Neville N. Russell is a grantee of the mortgaged premises who expressly assumed and agreed to pay said mortgage. Only the defendant Russell has answered the bill of complaint. The defendant Grossman was not served with process and a decree pro confesso has been entered against the defendants Multiple Realty and Construction Company and Irving Rubin. The foreclosure bill was filed on August 23d 1937, and a final decree entered therein on January 3d 1938, in the sum of $41,787.46 with interest from December 15th, 1937, and taxed costs of $477.25. At the sheriff's sale held on March 8th, 1938, the mortgaged premises were purchased by the complainant for the sum of $100, and the sale was duly confirmed on March 19th, 1938. Notice of this suit was filed in the office of the register of Essex County on May 31st, 1938, and the bill of *Page 529 
complaint was filed on June 7th, 1938. Subpoena was issued under date of June 8th, 1938. The amount of the deficiency claimed is $42,845.12. The answer of the defendant Russell asserts "no knowledge or information sufficient to form a belief" as to the principal statements of the bill of complaint, and also asserts a right to a credit of the fair value of the mortgaged premises as of the date of the sheriff's sale pursuant to the doctrine ofFederal Title and Mortgage Guaranty Co. v. Lowenstein,113 N.J. Eq. 200; Young v. Weber, 117 N.J. Eq. 242, and kindred cases. The answer also alleges that at the time of the sheriff's sale the fair market value of the mortgaged premises was $45,000; the existence of a general economic depression; the absence of competitive bidding; the inability of this defendant to refinance the mortgage; that the retention of the mortgaged premises and a decree for the deficiency claimed would result in a double satisfaction of the mortgage debt, and other facts bringing this controversy within the purview of the cases cited. This defendant also, by way of counter-claim, alleges that he was unaware of the fact that the deed by which the mortgaged premises were conveyed to him contained a covenant for the assumption of the mortgage indebtedness until June 10th, 1938, when he was served with subpoena in these proceedings; and he seeks the reformation of the deed by deleting therefrom the said assumption clause and covenant. The answer was filed on July 12th, 1938. The matter now comes before the court on a motion to strike paragraphs 1 to 16 of the answer, except paragraph 3, as sham, and paragraphs 17 to 21 as frivolous, and the argument advanced in support of this motion is that the foreclosure decree and order confirming the sale are res adjudicata as to the amount of the deficiency and cannot be collaterally attacked. Affidavits filed in support of the motion fully establish the principal factual allegations of the bill.
This suit is on all fours with Better Plan Building and LoanAssociation v. Holden, 114 N.J. Eq. 537. In that suit the complainant sought a money decree for a deficiency against the original obligor and an assuming grantee after the foreclosure and a sale of the mortgaged premises at a nominal figure of $100. The defenses interposed by the defendants *Page 530 
there were similar to those advanced here, and on a motion to strike said defenses Vice-Chancellor Buchanan held that as the complainant was seeking equity it must do equity, and refused to strike the answer. That decision controls the decision here unless it has been overruled. It has been frequently cited in this court with approval, and, so far as my research discloses, has never been expressly criticised or disapproved in any court. However, counsel for complainant claims that it has been impliedly overruled by the decisions of the Court of Errors and Appeals in Fruzynski v. Jablonski, 117 N.J. Eq. 117; Broadman
v. Colonial Building-Loan Association, 118 N.J. Eq. 275, andHarvester Building and Loan Association v. Kaufherr, 122 N.J. Eq. 373,
and in this court by Meranus v. Lawyers' andHomemakers' Building and Loan Association, 118 N.J. Eq. 586.
Counsel for the answering defendant, in opposing the motion to strike, relies upon Better Plan Building and Loan Association
v. Holden, supra; Baader v. Mascellino, 113 N.J. Eq. 189;
reversed (on question of evidence only), 116 N.J. Eq. 126, and other decisions of this court in which the equitable maxim of "he who seeks equity must do equity" has been applied.
At the outset it should be noted that R.S. 2:65-3 and2:65-5 have no application to this controversy, as the mortgage here involved was executed in July, 1929. However, a review of some of the pertinent statutes might be helpful.
Under the provisions of a supplement to the Chancery Act, approved March 29th, 1866 (Nix. Dig. 119), a mortgagee might, in a suit to foreclose his mortgage, obtain a money decree for a deficiency arising upon the foreclosure sale as well as a decree of foreclosure and sale; but by P.L. 1880 ch. 170 p. 256 ¶ 3, that practice was discontinued and by that act and the amendment thereof in P.L. 1881 ch. 147 p. 185, it was provided that no action for deficiency on the mortgage bond should be maintained until after foreclosure and sale. Those statutes further provided that upon recovery of a judgment for such deficiency "suchrecovery shall open the foreclosure and sale of said premises and the owner of the property at the time of said foreclosure and sale may redeem." (Italics mine.) The act of 1881 merely extended the right to *Page 531 
redeem to any person against whom a judgment had been recovered.P.L. 1915 ch. 178 p. 339 contains the same provisions as the 1880 and 1881 acts, but provides further that reasonable expenses for taxes, c., should be added to the amount necessary for redemption. Thus the law stood until the enactment of chapter 82,P.L. 1933 p. 172. Section 2 of that act provided, amongst other things, that the obligor or obligors on said bond may file an answer in the suit disputing the amount of the deficiency claim, in which event both parties might introduce evidence as to the "fair market value" of the mortgaged premises at the time of the foreclosure sale, which fair market value should be determined by the court with or without a jury; and further, that the amount of such fair market value should be credited to the deficiency claim before the entry of judgment. That act also provided that where the parties liable for the deficiency shall have answered disputing the amount of the deficiency as claimed, the right to redeem was terminated and recovery of judgment shall not openthe foreclosure and sale. (Italics mine.) These provisos were adopted by R.S. 1937, 2:65-3-4-5. The first statutory provision for the right to have the "fair market value" determined and allowed as a credit on a deficiency claim appeared in P.L. 1933ch. 82, and later, in the sections of the revision referred to above. Likewise the provision that an answer disputing the amount of the claimed deficiency should terminate the right to redeem and recovery on the bond should not open the foreclosure and sale. However, in Vanderbilt v. Brunton Piano Co.,111 N.J. Law 596, it was held that the provisions of P.L. 1933, ch. 82, substituting "fair market value" of property in place of proceeds of sale as the credit to be allowed the debtor, was such a limitation on the mortgagee's right of recovery on the mortgage bond as to be an impairment of a pre-existing contract and, as applied to mortgages executed prior to that act, in conflict withN.J.S.A. Const. art. 4 ¶ 3 p. 7.
That the provisions of these acts that the filing of an answer disputing the amount of the deficiency claim shall terminate the right to redeem from foreclosure sale, and that recovery on the bond shall not open the foreclosure and sale *Page 532 
of the premises, as applied to pre-existing mortgages, are unconstitutional as impairing the obligation of a pre-existing contract, and in conflict with the constitutional provisions referred to, is shown by the decision of the Supreme Court inBaldwin v. Flagg, 43 N.J. Law 495 (at p. 504). That decision was followed and the doctrine expanded in Morris v.Carter, 46 N.J. Law 260. That decision was approved and followed by the Court of Errors and Appeals in Wilkinson v.Lemassina, Jr., 51 N.J. Law 61, and is further cited with approval in Hauseman v. Johnston, 110 N.J. Eq. 319.
The bond and mortgage in the instant case having been executed in 1929, prior to the date mentioned in R.S. 2:65-3, the provisions of the law in effect in 1929 must govern. Subsequent legislation did not bar the interposition of the defense in this suit which the complainant now moves to strike, and a money decree for a deficiency in this suit will open the foreclosure and sale and revive the right to redeem.
The arguments advanced by counsel for the respective parties on this motion necessitate an examination and classification of the various decisions of this court and the Court of Errors and Appeals in which a credit for the fair value of mortgaged premises against a deficiency claim has been sought or allowed on equitable principles. We are not here concerned with the statutory right, if any, to such credit. The value which has been the subject of inquiry in the cases decided in this court is "fair value" and not "fair market value," the term used in the statute. Fidelity Union Trust Co. v. Ritz Holding Co.,126 N.J. Eq. 148. During the economic emergency of which the decisions in the Lowenstein and kindred cases were born, there was no such thing as "market value," fair or otherwise.
The classes into which the various suits in equity involving this doctrine of fair value resolve themselves, it seems to me, are six in number, as follows:
 1.
Those cases in which application is made to this court for relief before confirmation of sale. Examples of cases of this class are Federal Title and Mortgage Guaranty Co. v.Lowenstein, *Page 533 supra; Young v. Weber, supra; Meyer v. Blacker, 120 N.J. Eq. 35; United Building and Loan Association v. Neuman, 113 N.J. Eq. 244; Fidelity Union Trust Co. v. Dreyfuss, 121 N.J. Eq. 281; Fidelity Union Trust Co. v. Pasternack, 122 N.J. Eq. 180;affirmed, 123 N.J. Eq. 181; Fidelity Union Trust Co. v.Appleby, 122 N.J. Eq. 59; Ukrainian National Association v.Linden Supply Co., 124 N.J. Eq. 400; Rosenwasser v. Weiss,124 N.J. Eq. 14; Fidelity Union Trust Co. v. Ritz Holding Co.,supra; National Mortgage Corp. v. Deering, 121 N.J. Eq. 274.
 2.
Cases in which foreclosure sale has been confirmed, suit at law on the bond begun, application to this court to vacate the order of confirmation and for a stay of legal proceedings, the petition in Chancery being filed before the time for appeal has expired. Examples of this class of cases are Lurie v. J.J. HockenjosCo., 113 N.J. Eq. 504; affirmed, 115 N.J. Eq. 304; Fruzynski v.Jablonski, 114 N.J. Eq. 23; reversed, 117 N.J. Eq. 117;Broadman v. Colonial Building-Loan Association, supra.
 3.
Cases in which the sale has been confirmed, suit at law commenced, application to Chancery for vacation of order of confirmation and a stay of proceedings at law, after the time for appeal has expired. Cases under this heading are Fidelity UnionTrust Co. v. Petchensky, 119 N.J. Eq. 514; Fidelity Union TrustCo. v. North Jersey Poultry Co., 123 N.J. Eq. 259; BluestoneBuilding and Loan Association v. Glasser, 117 N.J. Eq. 392.
 4.
Cases in which the foreclosure sale has been confirmed, judgment at law for deficiency obtained and application to this court for a stay of execution and enforcement of judgment. Examples of this class of cases are Meranus v. Lawyers' *Page 534 and Homemakers' Building and Loan Association, 116 N.J. Eq. 402;reversed, 118 N.J. Eq. 586; Miller v. Bond and MortgageGuaranty Co., 121 N.J. Eq. 197; Falcon Building and LoanAssociation v. Schwartz, 121 N.J. Eq. 27.
 5.
Cases in which the foreclosure sale has been confirmed, judgment at law for deficiency obtained, execution returned unsatisfied, bill for discovery in aid of execution filed, and application to Chancery for stay of proceedings and credit of fair value. Examples of this class of cases are HarvesterBuilding and Loan Association v. Kaufherr, 121 N.J. Eq. 327;affirmed, 122 N.J. Eq. 373; Baader v. Mascellino, supra.
 6.
Cases in which foreclosure sale at a nominal price has been confirmed without objection, bill in Chancery filed for a money decree for the apparent deficiency, and a claim of credit for fair value is advanced by answering defendants. Examples of this class of cases are Better Plan Building and Loan Association v.Holden, supra; Fidelity Realty Co. v. Fidelity Corporation ofNew Jersey, 113 N.J. Eq. 356; Fisk v. Wuensch, 115 N.J. Eq. 391.
With the first five classes of cases we need not now concern ourselves, except to say that the procedure exemplified in Class 1 lends itself to universal approval. And it is noteworthy that the doctrine of the Lowenstein Case has been expressly approved by the Court of Errors and Appeals in Vanderbilt v. BruntonPiano Co., Lurie v. Hockenjos, Fidelity Union Trust Co. v.Pasternack, National Mortgage Corp. v. Deering and FidelityUnion Trust Co. v. Dreyfuss, supra.
The procedure in Classes 2, 3, 4 and 5 has been generally disapproved, except that in Lurie v. Hockenjos, supra, the Court of Errors and Appeals considered the bill praying a restraint of the law action as a direct attack upon the decree in the former foreclosure proceedings, regarded it as a bill of review, and approved the action of the Court of Chancery *Page 535 
in allowing the order of confirmation to stand conditional upon the mortgagee's crediting the fair value of the premises on the deficiency claim, a result, it would seem, somewhat inconsistent with the later decisions in Fruzynski v. Jablonski andBroadman v. Colonial Building-Loan Association, supra. (In the still later case of Fidelity Union Trust Co. v. NorthJersey Poultry Co., supra, cited in Class 3, the appellate court said: "It is well settled that the present proceeding is like a bill of review," citing Lurie v. Hockenjos and Meranus v.Lawyers' and Homemakers' Building and Loan Association, supra); and except also that notwithstanding the comment of the appellate court in Harvester Building and Loan Association v. Kaufherr,supra, that the affirmation by the Court of Errors and Appeals in Baader v. Mascellino "did not adopt the reasoning of the court below," that reasoning was not expressly disapproved. Nor was such disapproval implicit in the opinion in the HarvesterCase as one of the factors necessary to justify a credit of fair value — the inability of the mortgagor to protect himself at the foreclosure sale — was there absent. In all of the cases cited as examples of these four classes, proceedings at law were attacked either before or after judgment, and the foreclosure decree and order confirming sale were held to be res adjudicata as to the amount of the deficiency. But they are not res adjudicata here because the defense interposed by the answer in this suit could not have been set up in defense of the foreclosure suit. Mann
v. Bugbee, 113 N.J. Eq. 434. In that case the nature of a suit in Chancery for a deficiency was distinguished from that of a suit to foreclose the mortgage, and Vice-Chancellor Buchanan there pointed out that a suit for a personal judgment for deficiency against a subsequent assuming grantee is not a suit for the same cause of action as the foreclosure suit. At page 439 of the report Vice-Chancellor Buchanan said:
"The suit for personal judgment for deficiency against the subsequent grantee is not a suit for the same cause of action as the foreclosure suit; on the other hand, it does necessarily involve and include an assertion by plaintiff or complainant of at least one claim of right which was necessarily involved *Page 536 
in his foreclosure suit — to wit, the assertion as to the amount of the mortgage debt due and owing. In the foreclosure suit, however, he asserted a second right, i.e., to collect this amount from the lands; in the deficiency suit he asserts a different right, i.e., to collect it from the defendant personally. As to the first right, which is identical in both suits, the defendant who was also a party in the first suit, is concluded by the former decree — he can only set up allegations as to facts subsequent to that decree, such as payments on account of the mortgage debt made subsequent to the foreclosure. As to the second right — the right to require defendant personally to make payment — that right was not involved in the foreclosure suit, and the defendant can set up any and all rights which he may claim (other than anything seeking to controvert the amount of the mortgage debt remaining unpaid at the time of the foreclosure) as tending to deny, defeat or modify personal liability on his part to the plaintiff or complainant. In this respect the former decree is not an estoppel against him (unless such rights were in fact expressly pleaded, tried and determined in the former suit — Andrews v. Stelle, 22 N.J. Eq. 478), because these rights were not involved in the former suit and hence not determined by the decree therein, by necessary implication although not pleaded."
True, the foreclosure decree was res adjudicata as to the amount of the mortgage debt due and owing. But the answer in this suit does not challenge that amount, it merely sets up rights "tending to deny, defeat or modify personal liability — to the complainant," rights which are peculiarly cognizable in equity.
This brings us to a consideration of the sixth class of cases exemplified by Better Plan Building and Loan Association v.Holden, Fidelity Realty Co. v. Fidelity Corporation of NewJersey and Fisk v. Wuensch, supra. It is in this class that the instant case falls. Apparently, in neither Fidelity RealtyCo. v. Fidelity Corporation of New Jersey nor Fisk v.Wuensch was it urged or considered that the foreclosure decree and order confirming sale were res adjudicata as to the amount of the deficiency. Credit for the fair value of the mortgaged premises was given as a matter of course. While *Page 537 
the cases cited in this group antedate the decisions of the Court of Errors and Appeals in the Fruzynski, Broadman, Harvester andNorth Jersey Poultry Co. cases, there is no reason to suppose that the results would have been any different had they been decided subsequent to the decisions last cited. In each of the appellate decisions there was a lack of some special equity necessary to entitle the applicant to the relief sought. Here, as in the other cases in this group, no action at law is involved, but the bill invokes the inherent jurisdiction of the Court of Chancery in suits against assuming grantees under the long-recognized doctrine of subrogation. Pruden v. Williams,26 N.J. Eq. 210 (Chancellor Runyon, 1875). Equity had jurisdiction in such cases before the passage of the act of March 29th, 1866 (Nix. Dig. 119, Rev. tit. "Chancery" 76) on the principle of subrogation; Tichenor v. Dodd (1844), 4 N.J. Eq. 454; Klapworth v. Dressler (1860), 13 N.J. Eq. 62;Jarman v. Wiswall (1873), 24 N.J. Eq. 267; hence the jurisdiction of this court is not confined by that act to suits for the foreclosure and sale of mortgaged premises.
That the jurisdiction arises by virtue of this equitable right, subrogation, and does not exist in the case of an original obligor only, is settled by Princeton Savings Bank v. Martin,54 N.J. Eq. 435. For almost one hundred years the courts of this state have held that the remedy of a mortgagee or or obligee on his bond against subsequent grantees who had assumed payment of the mortgage debt was exclusively in equity. Vice-Chancellor Van Fleet, in Crowell v. Currier (1876), 27 N.J. Eq. 152,
observed that the right of a mortgagee to hold the purchaser of the equity of redemption, who assumed payment for a deficiency arising on foreclosure, does not rest on the theory of a contract between the purchaser and mortgagee upon which an action at law may be maintained, but stands, according to an almost unbroken line of adjudications, on the ground that the covenant of the purchaser is a collateral security obtained by the mortgagor which, by equitable subrogation, inures to the benefit of the mortgagee. And see Garnsey v. Rogers, 47 N.Y. 233; King v.Whiteley, 10 Paige 465; Curtis v. Tyler, 9 Paige 432; Blyer *Page 538 
v. Monholland, 2 Sand. Ch. 478; Trotter v. Hughes, 12 N.Y. 74.
In Klapworth v. Dressler, supra, it was held that the remedy of the mortgagee is purely equitable and that he has no remedy at law. Of like effect are the decisions in Joslin v.New Jersey Car Spring Co. (1873), 36 N.J. Law 141; Crowell
v. Hospital of St. Barnabas (1876), 27 N.J. Eq. 650; NewarkSavings Institution v. Forman (1881), 33 N.J. Eq. 436;Toffey v. Atcheson (1886), 42 N.J. Eq. 182; Allen v.Allen (1881), 34 N.J. Eq. 493; Green v. Stone (1896),54 N.J. Eq. 387; Biddle v. Pugh (1900), 59 N.J. Eq. 480;Eakin v. Schultz (1900), 61 N.J. Eq. 156; Degrauw v.Mechan (1891), 48 N.J. Eq. 219; Howell v. Baker (1930),106 N.J. Eq. 434; Reeves v. Cordes (1931), 108 N.J. Eq. 469; Keer v. New Jersey Title Guarantee and Trust Co.
(1934), 115 N.J. Eq. 389; Uptown Building and LoanAssociation v. Leff (1933), 112 N.J. Eq. 543; HollandReform School Society v. DeLazier (1915), 85 N.J. Eq. 497;Montclair Savings Bank v. Sylvester (Court of Errors andAppeals, 1937), 122 N.J. Eq. 518; Aque v. Dexheimer
(1938), 123 N.J. Eq. 133. (Cf. Loudenslager v. WoodburyHeights Land Co. (1900), 64 N.J. Law 405, in which a doubt was expressed whether the obligation could be enforced in an action at law.)
This long line of decisions stood unchallenged until 1940, when our Supreme Court decided that a grantee who assumes a mortgage debt and promises to pay it makes a contract with the grantor for the benefit of the mortgagee; and that since the adoption ofchapter 207, P.L. 1898 (now R.S. 2:26-3.6), a court of law has jurisdiction to entertain a claim based upon such assumption.Herbert v. Corby, 124 N.J. Law 249; affirmed,125 N.J. Law 502, and followed in Woodbridge v. DeAngelis,125 N.J. Law 579. These cases hold that, by virtue of the statute, courts of law have concurrent jurisdiction with that inherent, original jurisdiction which has always been, from time immemorial, the prerogative of the Chancellor. These decisions, rendered subsequent to the filing of the bill in this cause, in nowise question or attempt to deny the jurisdiction of the Court of Chancery in such matters, but merely declare that under the statute there is available an additional forum. *Page 539 
But where a litigant chooses one of two concurrent forums, he must submit to the rules and applicable principles of the forum of his choice; and "one who seeks the aid of a court of equity will not be heard to complain that the strict rules of law are not enforced, or, as it has been elsewhere expressed, "One who seeks the aid of equity has no standing to question the application of its fundamental rules." Carpenter v. Wright,158 Tenn. 289; 138 S.W. Rep. 2d 51. One seeking the aid of a court of equity, whether that aid is such as can be obtained only in a court of equity, submits himself to the jurisdiction of the court and subjects himself to the imposition of such terms as well established equitable principles require. 19 Am. Jur. 320 ¶463; Comstock v. Thompson, 286 Pa. 457; 133 Atl. Rep. 638.
Chancery having inherent jurisdiction, then the prayer of the bill is addressed to the Chancellor's discretion and he may exercise it or not according as the prayer appeals to his conscience. This being so, he may exercise it conditionally or not at all. Miller v. Bond and Mortgage Guaranty Co., 121 N.J. Eq. 197; Harvester Building and Loan Association v. Kaufherr,supra. "The maxims and principles of equity apply to suits in equity, even though the suit is also cognizable in the law courts." 30 C.J.S. p. 456 ¶ 89. And equity will not enforce a technical legal right to the unconscionable injury of a defendant. Equity administers its remedies in accordance with its own rules. Randolph v. Quidnick, 135 U.S. 457. And a court of equity will protect the equitable rights of the defendant arising upon his answer, regardless of the nature of the relief sought by the plaintiff. St. Louis and San Francisco Railroad Co. v.Richards, 23 L.R.A. (N.S.) 1032 p. 1044, citing Pom. Eq.Jur. ¶ 388. The applicable equitable maxim is "He who seeks equity must do equity."
Pomeroy, in his learned work on Equity Jurisprudence (4thed.) vol. 1 p. 714 ¶ 385 says:
"The meaning is, that whatever be the nature of the controversy between two definite parties, and whatever be the nature of the remedy demanded, the court will not confer its equitable relief upon the party seeking its interposition and aid, unless he has acknowledged and conceded, or will admit and provide for, all the equitable rights, *Page 540 
claims, and demands justly belonging to the adversary party, and growing out of or necessarily involved in the subject-matter of the controversy. It says, in effect, that the court will give the plaintiff the relief to which he is entitled, only upon condition that he has given, or consents to give, the defendant such corresponding rights as he also may be entitled to in respect of the subject-matter of the suit."
And in paragraph 388, page 722:
"* * * it may be regarded as a universal rule governing the court of equity in the administration of its remedies, that whatever may be the nature of the relief sought by the plaintiff, the equitable rights of the defendant, growing out of or intimately connected with the subject of the controversy in question, will be protected; and for this purpose the plaintiff will be required, as a condition to his obtaining the relief which he asks, to acknowledge, admit, provide for, secure, or allow whatever equitable rights (if any) the defendant may have, and to that end the court will, by its affirmative decree, award to the defendant whatever reliefs may be necessary in order to protect and enforce those rights. This principle is not confined to any particular kind of equitable rights and remedies, but pervades the entire equity jurisprudence, so far as it is concerned with the administration of equitable remedies."
Lord Camden, in Smith v. Clay, 3 Bro. C.C. 646, says, in part: "A court of equity * * * is never active in relief against conscience or public convenience * * *. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence. When these are wanting the court is passive and does nothing."
In Miller v. Bond and Mortgage Guaranty Co., supra, it was said: "It is a far different thing for the Court of Chancery to stay its hand in granting relief unless and until the applicant for such relief does equity than to grant affirmative relief such as" there sought. And in this connection it should be borne in mind that in that case, and in all of the cases listed under classifications 2, 3, 4 and 5 above, the party seeking a credit for fair value, and not the plaintiff in the law action, or the judgment creditor, was the party invoking equity's jurisdiction.
We are thus brought back to the original question as to whether or not the decision of this court in Better Plan Building andLoan Association v. Holden, supra, is still the law *Page 541 
of this court or has been impliedly overruled by the decisions relied upon by the complainant. Or, stated in other language, whether the inherent jurisdiction of this court can be invoked by a suitor without that suitor submitting to the application of the fundamental and time-honored rules and principles of equity jurisprudence. The answer to this question, in whatever form presented, must, it seems to me, be in the negative. It would serve no useful purpose to here repeat the reasoning of Vice-Chancellor Buchanan in the Better Plan Building and LoanAssociation case, but it seems to me to be unanswerable, and I concur fully therein.
All that complainant can ask in equity is that his debt shall be paid, for "equity will not suffer a double satisfaction to be taken." Francis, Maxims of Equity (2d ed. 1739) 41; FederalTitle and Mortgage Guaranty Co. v. Lowenstein, supra; HillsideNational Bank v. Silverman, 116 N.J. Eq. 463; Irving Trust Co.
v. Marine Midland Trust Company of New Jersey, 47 Fed. Rep.
2d 907; 30 C.J.S. p. 458 ¶ 89. As Backes, V.C., aptly remarked in Bourgeois v. Risley Real Estate Co., 82 N.J. Eq. 211,
"Satisfaction of the debt, not pillage of the debtor's estate" is the province of the court of equity. That it would be unconscionable to permit a mortgagee to hold the mortgaged premises and to also collect the full amount of the mortgage bond, thus obtaining a double satisfaction of his debt, has been repeatedly decided by the courts of this state. And, as already pointed out, a deficiency decree entered in this cause will "open the foreclosure decree and sale" and revive the right to redeem. The motion to strike the answer is denied. *Page 542