(No. 16003.—Decree affirmed.)

MARGARET N. WORDEN *et al. vs.* JOHN R. RAYBURN *et al.*
Defendants in Error.—(ROBERT L. WATSON *et al.* Plaintiffs in Error.)

*Opinion filed October 28, 1924.*

1. JUDICIAL SALES—*sale is not binding until confirmed by court.*
A judicial sale is not complete and is not binding until it has been confirmed by the court which ordered it.

2. SAME—*when court may order a re-sale.* Mere inadequacy of price may not, alone, be sufficient to justify the court in setting aside a judicial sale but the law does not tolerate any influence likely to prevent competitive bidding, and where the conditions under which the sale was held tend to reduce or destroy competition the court may set the sale aside and order a re-sale.

3. SAME—*chancellor has broad discretion in reviewing judicial sale.* The chancellor has a broad discretion in reviewing the acts of the master in making a judicial sale, and this discretion, unless abused, will not be interfered with by a court of review.

WRIT OF ERROR to the Circuit Court of Warren county; the Hon. WILLIS F. GRAHAM, Judge, presiding.

LAUDER & LAUDER, and WATSON, DUVALL & KADYK, for plaintiffs in error.

HANLEY & COX, for defendants in error John R. and Frank S. Rayburn.

GRIER, SAFFORD & SOULE, L. E. MURPHY, JOHN J. KRITZER, and L. H. HANNA, for other defendants in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

On June 8, 1922, George W. Rayburn, Frank S. Rayburn and John R. Rayburn were the owners in fee simple, as tenants in common, of approximately 2800 acres of land in Warren, Mercer and Rock Island counties. They were co-partners by the style of Rayburn Bros., and for some

years had been engaged in farming and stock raising, in the prosecution of which they had become indebted in large sums of money. On June 8, 1922, George W. Rayburn died testate, and on the same day Frank S. Rayburn, and John R. Rayburn, with his wife, conveyed for the benefit of their creditors, to Davis A. Woodward, George E. Ockert and Charles E. Torrence, as trustees, the co-partnership property and assets and their undivided interests in the lands. The last will of George W. Rayburn was admitted to record by the county court of Warren county, but Minnie C. Rayburn, the testator's widow, renounced the will and elected to take under the statute. On March 30, 1923, Margaret N. Worden and others, as creditors of George W., John R. and Frank S. Rayburn and Rayburn Bros., filed their bill in the circuit court of Warren county, praying the court to take over the administration of the estate of George W. Rayburn, deceased, and the trust under the conveyance to Woodward, Ockert and Torrence, and to combine and administer them according to the rules and practice in chancery. The relief sought was granted, and Woodward, Ockert and Torrence, the former trustees, were apponted receivers of all the property. A later decree ordered a sale of the lands disencumbered of all mortgage indebtedness, rights of dower and estates of homestead, and the master in chancery was directed to execute the decree. On January 2, 1924, the lands in Mercer county, consisting of 834 acres, were sold by the master at public sale to Robert L. Watson and William Hayman for $67,600, subject to certain taxes and drainage assessments, aggregating approximately $13,500. The master filed his report of sale on January 10, 1924. No action having been taken thereon, Watson and Hayman, the purchasers, on January 21, 1924, filed their petition asking to be made parties defendant to the suit. The prayer of the petition was granted, and on the following day the purchasers filed another petition, stating that no objections had been made to

the report of sale and asking that a rule be entered fixing a time within which all persons interested should show cause, if any, why the sale should not be confirmed. Such a rule was entered, objections were filed, and it was stipulated that affidavits introduced by the objectors and the petitioners should be considered by the court in determining whether or not the sale should be confirmed. The court sustained the objections, set aside the sale and ordered a resale. The purchasers, Robert L. Watson and William Hayman, have sued out this writ of error to review the record.

The question for decision is whether the chancellor abused his discretion in setting aside the sale of the land. It is unnecessary to set forth in detail the statements contained in the affidavits offered by the respective parties. Those in behalf of the objectors are to the effect that on the day of sale the roads were in poor condition and in consequence the sale was poorly attended; that efforts were made to prevent bidding; that reports were circulated that the title to the lands was defective and that the lands were sold for an inadequate price. Affidavits introduced by the plaintiffs in error show that the roads were in good condition for travel; that the sale was well attended; that no efforts were made to discourage a sale of the lands for their full value, but that the objectors were active at the sale to obtain from persons present affidavits supporting objectors' opinions of the value of the lands; that they were sold subject to taxes and drainage assessments, and that in view of these liens and charges the price for which the lands were sold was not inadequate. The valuations placed upon the lands range from a minimum of $126,000 to a maximum of $168,000 for the objectors, as opposed to a minimum of $65,000 and a maximum of $72,000 for the plaintiffs in error.

William H. Pankey and J. Scott Blackwell, who attended the sale, stated in their affidavits that they were influenced adversely by reports concerning the title to the lands. One

313—32

did not bid at all, and the other, owing to those reports, refrained from increasing his bid. J. O. Laugman offered, upon a re-sale, to bid at least $10,000 more than the price obtained, and tendered his bond, with sureties, as an earnest of performance on his part.

The decree which ordered the sale expressly provided for a report by the master, "and upon confirmation  *  *  * the master shall execute deeds to the purchasers." Confirmation of the sale was made a condition precedent to the execution and delivery of the master's deeds. The acceptance of the bid and the proceedings which followed were not final or binding until the confirmation of the sale. A judicial sale is not complete until it has been confirmed by the court which ordered it. 16 R. C. L. 81; *Redmond* v. *Cass,* 226 Ill. 120; *Hart* v. *Burch,* 130 id. 426.

While at the time of the sale there may not have been any general circulation of reports adverse to the title, yet we believe reports were circulated which prevented that freedom of bidding which would insure the sale of the lands at a figure approximating their value. The law does not tolerate any influence likely to prevent competition in judicial sales. (35 Corpus Juris, 40.) Mere inadequacy of price may not, alone, be sufficient to justify the court in setting aside a judicial sale, but where the conditions under which the sale was held tend to reduce or destroy competition it is proper for the court to do so. (*Bondurant* v. *Bondurant,* 251 Ill. 324; *Smith* v. *Huntoon,* 134 id. 24; 16 R. C. L. 98; 35 Corpus Juris, 49, 103; Rorer on Judicial Sales,—2d ed.— sec. 1095; *Oswald* v. *Johnson,* 34 Ann. Cas. (Ga.) 1, note,) The reports of defects in the title and the price for which the lands were sold bring the instant case within the rule stated and justified the court in refusing confirmation of the sale. The chancellor has a broad discretion in reviewing the acts of the master in making a judicial sale. (*Roberts* v. *Goodin,* 288 Ill. 561; *Slack* v. *Cooper,* 219 id. 138;

*Hart* v. *Burch, supra.*)    That discretion, unless abused, will not be interfered with by a court of review.    *Slack* v. *Cooper, supra.*

The decree of the circuit court will be affirmed.

*Decree affirmed.*