"He who asks equity must do equity." On the proper application of this maxim depends the outcome of the suit. *Page 190 
Complainant, a judgment creditor, asks the court to aid in the collection of his judgment by setting aside fraudulent conveyances made by the debtor, Antonio Mascellino.
Complainant held a bond and mortgage made by Mascellino in the principal sum of $9,100. He foreclosed, obtained a decree for principal, interest and costs amounting to $10,175 and at the sheriff's sale, bought in the mortgaged property May 6th, 1931, for $100. Three months later, he recovered in the circuit court judgment for the deficiency of $10,316. Mascellino was the owner of other property which, on June 6th, 1930, he had put in the name of the Jefferson Holding Company. When first I heard this cause, I came to the conclusion that the conveyances had been made by Mascellino with the deliberate purpose of defrauding his creditors and that there should be a decree pursuant to the prayer of the bill, setting the transfers aside as against complainant. On further deliberation, while still satisfied of the fraudulent character of the transfers, I became uncertain that an unconditional decree for complainants would accomplish equity and so I permitted an amendment to the answer to be filed and more testimony to be taken, of which this is the gist:
At the time of the foreclosure sale, the mortgaged property was, in fact, worth several thousand dollars. The judgment debtor then, and ever since then, has been unable to raise in cash an amount which would enable him to bid the property up to its fair value on the foreclosure sale or to redeem it. He has been unable to protect himself and he asks the court to protect him by requiring complainant, as a condition to obtaining equitable relief, to credit upon the judgment the reasonable value of the property foreclosed. The complainant objected to the amendment to the answer and to the reception of testimony in support thereof, on the ground that the amendment disclosed no defense.
The mortgaged land is a vacant lot in the township of North Bergen, one hundred feet square. The lot was sold at auction in 1922 for $3,500. The street on which this lot faces was then merely a paper street; all around was vacant land. Thereafter, sewer and water pipes were laid, the street *Page 191 
was paved, houses were built in the neighborhood; the lot was assessed for the purpose of taxation in 1931 at $7,200. Real estate experts testified that at the time of the sheriff's sale, the fair value of the land was $11,000. It was subject, however, to liens for unpaid taxes and assessments and interest thereon amounting to $7,050. Although the testimony as to value was uncontradicted, I discount it and find that the fair value of the mortgaged land at the time it sold for $100, was $3,000 over and above the liens upon it.
The rule has long been settled that the price obtained at sheriff's sale conclusively fixes value for the purpose of establishing the deficiency on the bond. In Snyder v. Blair,33 N.J. Eq. 208, Vice-Chancellor Van Fleet wrote, "that sum for which property conveyed in pledge for the security of a debt is sold at judicial sale, must, so long as the sale stands, be taken, as between the parties to the suit, as a conclusive test of its value. This, as I understand it, is the rule presented by our statute. The seventy-sixth section of the Chancery act directs `that it shall be lawful for the chancellor, in any suit for the foreclosure or sale of mortgaged premises, to decree the payment of any excess of the mortgage debt, above the net proceeds of sale, by any of the parties to such suit who may be liable, either at law or in equity, for the payment of the same.'Rev. 118. The same rule was established by the courts long prior to the adoption of any statute upon the subject. GlobeInsurance Co. v. Lansing, 5 Cow. 380; Lansing v. Goelet, 9Cow. 346." Although the statute (P.L. 1866 p. 878) referred to above has been repealed (P.L. 1880 p. 255), the rule stated continues. Fischer v. Spierling, 93 N.J. Law 167; Berman v.145 Belmont Avenue Corp., 109 N.J. Eq. 256. Furthermore, the judgment of the circuit court estops Mascellino to question the amount of the deficiency on his bond. But this consideration is not dispositive of the case. Minzesheimer v. Doolittle,60 N.J. Eq. 394, was a creditor's suit based on a judgment of the New Jersey supreme court. The court of errors and appeals looked behind the judgment, found that it grew out of a wagering contract and directed the bill to be dismissed, "for courts of *Page 192 
equity do not always assist judgment creditors to enforce collection of their judgments. The complainant must come into a court of equity with a cause essentially equitable; it is not enough that his cause is unquestionably legal." I may therefore consider all the facts to determine whether complainant's suit is equitable.
There is no doubt but that in ordinary times the facts relied on by the defendant would not prevent a decree for complainant. The exact question was brought before Chancellor Runyon inBohde v. Lawless, 33 N.J. Eq. 412. The headnote reads: "It is no objection to a petitioner's right to set aside a voluntary conveyance of lands made to defeat a personal decree for deficiency on a foreclosure, that at such foreclosure sale the mortgaged premises were bought by the petitioner [the mortgagee] at much less than their actual value, where no fraudulent or inequitable conduct on the petitioner's part is shown." Ordinarily, a public auction fairly conducted is the most satisfactory test of the value of property, much more so than the testimony of experts.
The defendant himself, or his friends, can, by bidding, make sure of a fair price. Lastly, if the property sells for less than the mortgage debt and a deficiency judgment is taken, the debtor may redeem the property within six months thereafter. Comp.Stat. p. 3422 § 49. The court, therefore, will not listen to an allegation that the property sold for less than its real value. It will consider that the advantage which the creditor has thereby obtained, he may retain in good conscience, and may have the aid of this court as well as of the courts of law for the collection of the balance of his debt.
But the present times are not ordinary. On that I need not dwell. The relief of mortgagees has been a subject of the utmost concern by federal and state governments for the past two or three years. On foreclosure sale, there is no bidding by the public. The property is bought by the mortgagee or his agent at a nominal figure. Large apartment houses, small dwellings, vacant lots — all are struck off for about the same price. Property may be sold on foreclosure of a second mortgage for $100, subject to a large prior lien *Page 193 
and two or three months later, on foreclosure on the first mortgage, be sold again for $100. Obviously, the price received at sheriff's sale has no relation to the value of the property. And mortgagors in general are utterly unable to protect themselves by bidding up the property. They may have other lands of great value or stocks of merchandise, but these they cannot use for bidding and as a rule they have no cash. For the same reason, if deficiency judgments are entered, they cannot redeem. The situation is well described in Suring State Bank v. Giese
(Wis.), 246 N.W. Rep. 556, "the court takes judicial notice of the fact that the present economic depression has not merely resulted in a serious dislocation of the value of real estate, but also in the almost complete absence of a market for real estate. As a consequence, there is no cash bidding at sales upon foreclosure. In normal times, competitive bidding is the circumstance that furnishes reasonable protection to the mortgagor and avoids the sacrifice of the property at a grossly inadequate sale price. In the present situation the device of a judicial sale largely fails of its intended purpose because of the lack of competitive bidding and the question arises whether a court of equity is wholly impotent to rise to the needs of justice and see that the parties are fairly and properly protected. This is not a situation in which ordinary logic with respect to value has much vitality. In theory, a thing that cannot be sold has no value, and so with a parcel of real estate that is offered for sale at foreclosure. It may be argued that it is worth what purchasers will pay for it and no more, and that if the only price offered constitutes only a negligible part of its theretofore assumed value, it nevertheless represents the value of the real estate at that time. Such a conclusion is shocking to the conscience of the court, or as the old equity courts said, to the conscience of the chancellor, and to all notions of justice as applied to this situation. Certainly this land which is suffering from the consequences of a period of readjustment through which we are passing, has potential or future value which may legitimately be taken into account. What is said here is said in the light of the present emergency and because of the *Page 194 
present inadequacy of a judicial sale to establish a fair value for the security."
What is agreeable to equity and good conscience varies from time to time with changing social and economic conditions. The domain of the maxim, he who asks equity must do equity, is universal, said Vice-Chancellor Van Fleet, "and it is the duty of the court to apply it in any case where its application is necessary to the doing of justice." Mutual Benefit LifeInsurance Co. v. Brown, 30 N.J. Eq. 193, 199. "The present financial emergency, world-wide in its scope and affecting all nations and peoples, cannot be viewed as anything less than catastrophic. This may necessitate new application of legal and equitable rules and concepts requiring the courts to render `their judgments with more fidelity to economic facts, with more general utility,' and in partial or complete disregard of rules `conceived in the past, upon the basis of totally different postulates and world conditions.'" Vice-Chancellor Berry inFifth Avenue Bank v. Compson, 113 N.J. Eq. 152. InBourgeois v. Risley Real Estate Co., 82 N.J. Eq. 211, a judgment creditor levied on land which had been fraudulently conveyed by his debtor, bought it in at a fraction of its value and then asked chancery to set aside the fraudulent conveyance so as to perfect his title. Vice-Chancellor Backes said: "To grant the broad relief asked would yield the complainant ten-fold and more the amount of the debt; it would be giving the spoils as well as the fruits of the litigation. To decree the lands absolute in the complainant would create a situation quite as iniquitous and oppressive and as obnoxious to a court of conscience as that arising out of the fraudulent conduct of the defendants. Satisfaction of the debt and not pillage of the debtor's estate is equity's relief."
It seems to me inequitable in the instant case and under to-day's economic conditions, to set aside the fraudulent conveyances unless complainant surrenders the profit he made by purchasing the mortgaged land for $100. I will advise a decree that if complainant, within fifteen days, credits upon his judgment $2,900, then the conveyances will be set aside with costs, pursuant to the prayer of the bill; and that otherwise the bill be dismissed. *Page 195