Henry R. Levy, Appellant, v. Broadway-Carmen Building Corporation et al., Appellees.

Gen. No. 37,441.

Opinion filed December 31, 1934.

Isaac B. Lipson, of Chicago, for appellant; A. C. Lewis, of Chicago, of counsel.

Kamfner, Halligan & Marks, of Chicago, for appellees; Samuel M. Lanoff, of Chicago, of counsel.

Mr. Justice Scanlan delivered the opinion of the court.

In the above proceedings the chancellor entered a decree of foreclosure and sale finding the indebtedness due to complainant from defendant Broadway-Carmen Building Corporation, a corporation (hereinafter called Building Corporation), for principal, interest and moneys advanced, to be $70,246.91, and ordering a sale of the premises described in the trust deed if the said sum should not be paid within a period of three days. At the sale the master in chancery "struck off and sold the same to Henry R. Levy, the complainant, for the sum of $50,000, there being no other bidder at said sale." After the master presented his report of sale and distribution, Building Corporation filed objections to the report, which objections set up that the premises were worth more than the amount bid by complainant and that the world-wide depression had caused a destruction of the market value of real estate and an absence of competitive bidding at all foreclosure sales. Complainant filed a verified answer to defendant's objections and thereafter, by leave, defendant filed affidavits in support of its objections, and complainant filed additional affidavits in support of his answer. The chancellor then entered the following decretal order:

"This cause coming on to be heard upon the petition of the complainant to confirm the sale by the master in chancery, and upon objections to the confirmation of the master's report of sale, and upon the affidavits by Donald T. Morrison and David Gordon, on behalf of the defendants, and Henry R. Levy and M. B. Ruther-

ford, George S. Lurie and I. S. Lowenberg on behalf of the complainant, and the court having read the master's report of sale, and the objections to the confirmation thereof, and the affidavits submitted by all of the parties hereto, and having heard the arguments of counsel thereon, and being fully advised in the premises:

"The court finds that the bill of complaint was filed herein to foreclose a trust deed securing a total indebtedness of Sixty-five Thousand Dollars, upon which there was a balance due of Sixty-two Thousand Five Hundred Dollars, together with interest thereon from November 15, 1931 at 7% per annum; that the decree of foreclosure finds to be due thereon, the sum of Seventy-one Thousand Five Hundred Eight and 45/100 Dollars, including interest, solicitors' fees, costs, and expenses, and that on June 21, 1933 the master's sale was had and the premises were purchased by the complainant for the sum of Fifty Thousand Dollars, leaving a deficiency of Twenty-one Thousand Five Hundred Eight and 45/100 Dollars.

"The court finds that the notes secured by said trust deed were guaranteed by David Gordon and Ida Gordon, his wife, and that on June 17, 1932, complainant caused judgment to be entered on said notes, in his favor and against David Gordon and Ida Gordon, his wife, in the Municipal Court of Chicago, case #2760549, in the sum of Sixty-six Thousand Six Hundred Ninety-one and 87/100 Dollars, together with costs; that said judgment still remains in full force and effect, no part having been satisfied; that the premises herein foreclosed are located at 5100 Broadway, Chicago, Illinois, being the northwest corner of Broadway and Carmen Avenues, Chicago, Illinois, consisting of ninety-seven feet on Broadway by one hundred feet on Carmen Avenue, improved with a one story display building and service garage, occupying the entire land, ninety-seven by one hundred feet, and built to a front-

age height of fifteen feet, containing an auto display room approximately fifty by ninety-seven feet, with plate glass windows on two sides, tile floor, lavatory and toilet, with office section containing two private offices, and the balance of the building approximately fifty by ninety-seven feet, containing service garage with cement floor, and frame supply room and loft approximately twenty by fifty feet, with the entire building heated by steam and small basement, twenty-five by twenty-five feet, with Weil-McLain Boiler and Century Oil Burner, with hot water heater and tank, containing ninety-seven hundred square feet.

"The court further finds that the reproduction value of said building on June 15, 1933, and at all times subsequent thereto and at the present time, was and is Thirty-three Thousand Nine Hundred Fifty Dollars, less fifteen percent depreciation, leaving reproduction value of said building at that date amounting to Twenty-eight Thousand Nine Hundred Dollars, and that the fair and reasonable market value of the said building was then Twenty-eight Thousand Nine Hundred Dollars.

"The court further finds that the fair and reasonable market value of the land upon said date was Five Hundred Dollars per front foot, and, on the basis of the frontage of ninety-seven feet, the fair and reasonable market value on said date of the land was Forty-eight Thousand, Five Hundred Dollars, making a total market value of the building and land of Seventy-seven Thousand Four Hundred Dollars.

"The court further finds that the fair and reasonable market leasing value or economic valuation of said premises on said date was Eighty Thousand Dollars.

"The court further finds that on January 8, 1926, David Gordon negotiated with Henry R. Levy, complainant in this cause, to purchase the said property, and, at said time, the said Henry R. Levy was the prin-

cipal stockholder, officer and director of the Stude-
baker Sales Company, the then owner of said prem-
ises; that on January 28, 1926, David Gordon entered
into an agreement with the said Studebaker Sales
Company, through Henry R. Levy, to purchase, and
did purchase, the real estate herein involved for the
sum of One Hundred Thirty-five Thousand Dollars, of
which Thirty-five Thousand Dollars was paid in cash
on account of the purchase price, and a purchase
money mortgage for One Hundred Thousand Dollars,
was executed and delivered by David Gordon and Ida
Gordon, his wife, payable as follows: five notes num-
bered one to five, both inclusive, note No. 1 for Five
Thousand Dollars, Note No. 2 for Five Thousand Dol-
lars, Note No. 3 for Ten Thousand Dollars, Note No. 4
for Ten Thousand Dollars, and Note No. 5 for Seventy
Thousand Dollars, due respectively, one, two, three,
four, and five years after date; that Notes Numbers 1
to 4, both inclusive, in the aggregate sum of Thirty
Thousand Dollars, with interest, were duly paid by
David Gordon and Ida Gordon, his wife, leaving a
balance due, secured by said mortgage, of Seventy
Thousand Dollars; that on April 13, 1931, Note No. 5
in the sum of Seventy Thousand Dollars became due,
and at that time an agreement was entered into be-
tween the said Henry R. Levy, complainant herein,
and David Gordon, to pay the principal sum of Five
Thousand Dollars on account of the principal of said
note, and execute a note in the sum of Sixty-five Thou-
sand Dollars, secured by the trust deed foreclosed
herein; that it was further agreed between Henry R.
Levy and David Gordon that the real estate should,
prior to the execution and delivery of the notes and
trust deed, be transferred to a corporation to be
formed by this affiant, and further that a commission,
or discount, or additional interest be paid by the said
David Gordon to the said Henry R. Levy, complainant

herein, in the sum of Nineteen Hundred Fifty Dollars, for such extension.

"The court further finds that on April 14, 1931, title to said premises was conveyed by general warranty deed, executed by David Gordon and Ida Gordon, his wife, now deceased, to the Broadway-Carmen Building Corporation, Chicago, the stock of which was owned or controlled by David Gordon and Ida Gordon, his wife, which said warranty deed was recorded in the County Recorder's office of Cook County, Illinois, on April 16, 1931, as document No. 10883237.

"The court further finds that on April 27, 1931, the Broadway-Carmen Building Corporation did pay to the said Henry R. Levy, the sum of Nineteen Hundred Fifty Dollars, as a commission or discount, or additional interest, for the acceptance of the notes secured by the trust deed.

"The court further finds that the total amount paid in cash, exclusive of interest and taxes, on account of the purchase price of the real estate herein foreclosed, is as follows:

```
"Cash paid at time of purchase............$35,000.00
  "    "    on account of original mortgage  30,000.00
  "    "    "      "     commission  ........  1,950.00
  "    "    "      "     original mortgage  ..  5,000.00
                                            _____
                                                        71,950.00
Amount of new trust deed (the one fore-
   closed herein .........................$65,000.00
Paid on account of principal of new trust deed  2,500.00
                                            _____
Leaving a balance due on account of new
   trust deed—principal ..................$62,500.00
Total cash paid by defendants on account
   of the purchase price—principal old mort-
   gage, and discount or commission.................  $71,950.00
Total paid on account of principal of new
   trust deed ....................................   2,500.00
                                                   _____
Total paid on account of the principal of old
   mortgage, commission, and principal of new
   mortgage  ....................................  $74,450.00
```

"The court further finds that the master's report of sale herein should be confirmed, providing the court will declare satisfied, released, and cancelled, the outstanding and unpaid indebtedness found due and owing to the complainant from the defendants, or any of them, under the decree of foreclosure entered in this cause.

"The court further finds that the complainant has refused and does now refuse, in open court, to declare satisfied, released, and cancelled the outstanding unpaid indebtedness found due and owing to the complainant from the defendants, or any of them, under the decree of foreclosure entered in this cause.

"It is therefore ordered, adjudged, and decreed, that the confirmation of the master's report of sale be, and the same is hereby denied.

"It is further ordered, adjudged, and decreed that the mortgaged premises mentioned in the bill of complaint or so much thereof as may be sufficient to realize the amount so due the complainant, principal and interest, and also the costs of this suit, including the fees, disbursements, and commissions upon the sale herein mentioned, and which may be sold separately without material injury to the parties interested, be resold at public vendue, for cash in hand, to the highest and best bidder, at the Board of Appeals, Room 337 County Building, Chicago, Illinois; but in no event shall the master accept a bid for the entire premises, or separate bids for different parcels thereof which, in aggregate, amount to less than Seventy-one Thousand Five Hundred Eight and 45/100 Dollars, being the amount found due in the decree of foreclosure heretofore entered in this cause, together with interest and costs as therein provided.

"It is further ordered, adjudged and decreed that this cause be referred to Benj. E. Cohen, master in chancery of this court to execute this decree; that he give public notice of the time and place of said sale, by

300

previously publishing the same for the space of 30 days in a newspaper published in said county; and that the complainant, or any of the parties in this cause, may become the purchaser or purchasers; that the said master, on such sale being made, execute a certificate of purchase to each purchaser or purchasers thereof, or any portion thereof; which certificate shall specify the lands or tenements purchased by such purchaser or purchasers, and the sum paid therefor; or if purchased by the complainant in said bill, the amount of his bid, and the time when the purchaser will be entitled to a deed for such lands or tenements, unless the same shall be redeemed according to law; that the said master shall also file, in the office of the Recorder of said County, a duplicate of such certificate or certificates signed by him.

"The court also reserves jurisdiction over all matters not herein specifically disposed of."

To reverse the decree complainant prosecutes this appeal.

That the chancellor has a broad discretion in reviewing the acts of a master in making a judicial sale, and that this discretion, unless abused, will not be interfered with by a court of review, is settled law in this State. (See *Worden v. Rayburn,* 313 Ill. 495, 498; *Farmers and Mechanics Bank v. Griffith,* 352 Ill. 323, 327.) In the last case the court said:

"The highest bidder whose bid has been reported to the court as the best offer acquires no interest in or right to the land and is a mere offerer to purchase. Confirmation is final consent, and the court, being in fact the vendor, may consent or not, in its discretion."

The main contention of complainant is that "the rule is well settled that a judicial sale, regularly made in the manner prescribed by law, upon due notice, and without fraud, will not be set aside or refused confirmation on account of mere inadequacy of price, how-

ever great, unless the inadequacy is so gross as to shock the conscience and raise a presumption of fraud.'' In *Worden v. Rayburn, supra,* the court states (p. 498):

''Mere inadequacy of price may not, alone, be sufficient to justify the court in setting aside a judicial sale, but where the conditions under which the sale was held tend to reduce or destroy competition it is proper for the court to do so. (*Bondurant v. Bondurant,* 251 Ill. 324; *Smith v. Huntoon,* 134 id. 24; 16 R. C. L. 98; 35 Corpus Juris, 49, 103; Rorer on Judicial Sales, — 2d ed. — sec. 1095; *Oswald v. Johnson,* 34 Ann. Cas. (Ga.) 1, note.)''

In the well known case of *Suring State Bank v. Giese,* 210 Wis. 489, 246 N. W. 556, the Supreme Court of Wisconsin said:

''The question presented is one of great importance, and one to which earnest consideration has been given. The court takes judicial notice of the fact that the present economic depression has not merely resulted in a serious dislocation of the value of real estate, but also in the almost complete absence of a market for real estate. As a consequence there is no cash bidding at sales upon foreclosure. In normal times competitive bidding is the circumstance that furnishes reasonable protection to the mortgagor, and avoids the sacrifice of the property at a grossly inadequate sale price. In the present situation the device of a judicial sale largely fails of its intended purpose because of the lack of competitive bidding, and the question arises whether a court of equity is wholly impotent to rise to the needs of justice and see that the parties are fairly and properly protected. This is not a situation in which ordinary logic with respect to values has much vitality. In theory, a thing that cannot be sold has no value, and so with a parcel of real estate that is offered for sale at foreclosure. It may be argued

that it is worth what purchasers will pay for it, and no more, and that if the only price offered constitutes but a negligible part of its theretofore assumed value, it nevertheless represents the value of the real estate at that time. Such a conclusion is shocking to the conscience of the court, or, as the old equity courts said,. to the conscience of the chancellor, and to all notions of justice as applied to this situation. Certainly the land has value so long as it or the buildings upon it may be used, and certainly in the case of farm lands, which constitute the homes of farmers, the premises have value in the sense of usefulness, however difficult it may be to translate this value into terms of dollars. Furthermore, this real estate, which is suffering from the consequences of a period of readjustment through which we are passing, has potential or future value which may legitimately be taken into account. Its value in terms of dollars has been affected by a general condition. No one piece of land has depreciated in value; it has all depreciated. It has all suffered from the lack of demand on the part of buyers. Under these circumstances it is within the power of a court of equity, without the aid of statute, to take one or all of three steps for the protection of the parties and the promotion of a fair solution of the difficulties. What is said here is said in the light of the present emergency, and because of the present inadequacy of a judicial sale to establish a fair value for the security.

"1. The court may decline to confirm the sale where the bid is substantially inadequate. While it has been said that mere inadequacy of consideration is not a ground for setting aside a foreclosure sale, this rule has been rather carefully circumscribed by the court. In *Griswold v. Barden,* 146 Wis. 35, 130 N. W. 952, 953, this court, speaking through Mr. Chief Justice Winslow, said: 'It has been said by this court that it is the

settled practice of courts of equity to refuse a resale
for mere inadequacy of consideration, and that this
court will not depart from that rule where no other
cause exists. *Meehan v. Blodgett,* 86 Wis. 511, 57
N. W. 291. This is doubtless a correct statement of
the rule, but it seems from the argument in the present
case that it may be easily misunderstood. It must be
strictly confined to cases where there is absolutely no
fact appearing, except that the price is inadequate.
Whenever other facts appear, such as mistake, mis-
apprehension, or inadvertence on the part of the in-
terested parties or of intending bidders, as a result of
which it seems to the court the failure to obtain a fair
and adequate price for the property was due in whole
or in part to such mistake, misapprehension, or inad-
vertence, the court will readily refuse to approve the
sale. No fraud is necessary to justify the court in so
withholding its approval. The question simply is, Is
the sale under all the circumstances one of which the
court in justice to all parties should approve?'

"This doctrine is also stated in *Kremer v. Thwaits,*
105 Wis. 534, 81 N. W. 654, and *Johnson v. Goult,* 106
Wis. 247, 82 N. W. 139. What was said in the *Gris-
wold* Case is applicable here, when the fact of an in-
adequate price is coupled with an emergency which
operates to prevent competitive bidding. A court of
equity is justified in refusing to confirm the sale and
ordering a resale.

"2. The court, in ordering a sale or a resale, may,
in its discretion, take notice of the present emergency,
and, after a proper hearing, fix a minimum or upset
price at which the premises must be bid in if the sale is
to be confirmed. This is a power that courts of equity
ordinarily exercise in cases of foreclosure of corporate
property which is of such size and character as to pre-
clude the establishment of a fair price by competitive
or cash bidding. *Northern Pacific Railway Co. v.*

*Boyd,* 228 U. S. 482, 33 S. Ct. 554, 57 L. Ed. 931. We see no reason why the same power should not be exercised in cases where economic conditions are such as to preclude the element of competitive bidding, and to make ineffective the ordinary and usual manner of fixing the market value of the property.

"3. The court may, upon application for the confirmation of a sale, if it has not theretofore fixed an upset price, conduct a hearing, establish the value of the property, and, as a condition to confirmation, require that the fair value of the property be credited upon the foreclosure judgment. If an upset price has been established, the plaintiff may be required to credit this amount upon the judgment as a condition to confirmation. If the fair value as found by the court, when applied to the mortgage debt, discharges it, there will be no occasion for the entering of a deficiency judgment. In case this procedure is adopted by the court, the option should be given to the plaintiff to accept or reject it. In the event of its rejection, the resale of the property should be ordered.

"In the instant case the court evidently took the third of the three methods of dealing with this problem. While in terms it denied the deficiency judgment, in effect it valued the property, found this value to be equal to the debt, and required that it be credited against the debt as a condition to the confirmation of the sale. This was not error, for the reasons heretofore stated. However, it is our conclusion that plaintiff should have been given the option to accept or reject the condition. In the event that the condition is rejected, the court may set aside the sale and order a resale in accordance with the principles set out in this opinion. It follows that the order must be reversed.'' Complainant concedes that the *Suring* case supports the order in question, but contends that the doctrine announced in that case is bad law and has not

been followed by other courts. We find that the *Suring* case has been approved by a number of other courts. (See *Wilson v. Fouke,* 188 Ark. 811, 67 S. W. (2d) 1030; *Baader v. Mascellino,* 113 N. J. Eq. 189, 166 Atl. 466, 467; *Bank of Manhattan Trust Co. v. Ellda Corp.,* 265 N. Y. S. 115, 116–7; *Chemical Bank & Trust Co. v. Adam Schumann Associates,* 268 N. Y. S. 674– 678. As bearing upon the instant contention, see also *Better Plan Bldg. & Loan Ass'n v. Holden,* 114 N. J. Eq. 537, 169 Atl. 289, 290; *Monaghan v. May,* 273 N. Y. S. 475.) In *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U. S. 398, Mr. Chief Justice Hughes held that the mortgage moratorium law passed by the Minnesota legislature, suspending foreclosures for a limited period, was constitutional. Some of the statements in the opinion are helpful in determining the question before us. To quote from the opinion:

''And that the question is no longer merely that of one party to a contract as against another, but of the use of reasonable means to safeguard the economic structure upon which the good of all depends. . . . 'But into all contracts, whether made between States and individuals, or between individuals only, there enter conditions which arise not out of the literal terms of the contract itself; they are superinduced by the preexisting and higher authority of the laws of nature, of nations or of the community to which the parties belong; they are always presumed, and must be presumed, to be known and recognized by all, are binding upon all, and need never, therefore, be carried into express stipulation, for this could add nothing to their force. Every contract is made in subordination to them, and must yield to their control, as conditions inherent and paramount, wherever a necessity for their execution shall occur.' . . . In the absence of legislation, courts of equity have exercised juris- diction in suits for the foreclosure of mortgages to fix

the time and terms of sale and to refuse to confirm sales upon equitable grounds where they were found to be unfair or inadequacy of price was so gross as to shock the conscience. The 'equity of redemption' is the creature of equity. While courts of equity could not alter the legal effect of the forfeiture of the estate at common law on breach of condition, they succeeded, operating on the conscience of the mortgagee, in maintaining that it was unreasonable that he should retain for his own benefit what was intended as a mere security; that the breach of condition was in the nature of a penalty, which ought to be relieved against, and that the mortgagor had an equity to redeem on payment of principal, interest and costs, notwithstanding the forfeiture at law. This principle of equity was victorious against the strong opposition of the common law judges, who thought that by 'the Growth of Equity on Equity the Heart of the Common Law is eaten out.' The equitable principle became firmly established and its application could not be frustrated even by the engagement of the debtor entered into at the time of the mortgage, the courts applying the equitable maxim 'once a mortgage, always a mortgage, and nothing but a mortgage.' "

In referring to the power of the State to protect the public interest under the extraordinary conditions created by the great depression, the Chief Justice states:

"It cannot be maintained that the constitutional prohibition should be so construed as to prevent limited and temporary interpositions with respect to the enforcement of contracts if made necessary by a great public calamity such as fire, flood, or earthquake. See *American Land Co. v. Zeiss*, 219 U. S. 47. The reservation of state power appropriate to such extraordinary conditions may be deemed to be as much a part

of all contracts, as is the reservation of state power to protect the public interest in the other situations to which we have referred. And if state power exists to give temporary relief from the enforcement of contracts in the presence of disasters due to physical causes such as fire, flood or earthquake, that power cannot be said to be non-existent when the urgent public need demanding such relief is produced by other and economic causes.''

That case also answers the contention of complainant that the decree denies him his right to a complete and prompt enforcement of his rights, under the obligations of the trust deed, and that it, therefore, denies him his constitutional rights under section 14, article II, of the constitution of Illinois.

Complainant contends that the chancellor had not the right to provide in the decree that the master should accept no bid less in amount than the judgment, interest and costs. We find no merit in this contention. (See *Suring State Bank v. Giese, supra; Guaranty Trust Co. v. Chicago, M. & St. P. Ry. Co.,* 15 F. (2d) 434, 442; *McClintic-Marshall Co. v. Scandinavian-American Bldg. Co.,* 296 Fed. 601, 604; *Chemical Bank & Trust Co. v. Adam Schumann Associates, supra.* See also *Straus v. Chicago Title & Trust Co.,* 273 Ill. App. 63, 67–68.) Complainant closes his brief by propounding to us the following question: What is to happen ''if the plaintiff refuses to bid at the resale, and no one else offers a bid?'' The Circuit Court of Appeals, in *McClintic-Marshall Co. v. Scandinavian-American Bldg. Co., supra,* p. 605, gave the following answer to a like question:

''If the property cannot be sold, we cannot anticipate the changes that may be made necessary in the form of the decree or the terms of sale.''

We may say, in conclusion, that this is the first appeal, during the great depression, from an order of a chancellor setting aside a sale by a master. We approve of the decretal order appealed from and it is accordingly affirmed.

*Affirmed.*

Gridley, P. J., and Sullivan, J., concur.