Jessie Martin, Complainant, v. Norman Crews et al., Defendants.
Appeal of Stella Rosenberg, Appellant, v. Mina S. Oyster et al., Appellees.

Gen. No. 37,545.

Opinion filed February 1, 1935.

H. J. ROSENBERG, of Chicago, for appellant; ABRAHAM MILLER, of Chicago, of counsel.

SIMS, STRANSKY & BREWER, of Chicago, for certain appellees; OTTO W. BERG, of Chicago, of counsel.

HARRY A. FLECK, of Chicago, for certain other appellees.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This appeal is prosecuted by Stella Rosenberg, an intervening petitioner in a foreclosure proceeding, from an order of the superior court, entered March 27, 1934, sustaining objections to the master's report of sale and ordering a resale of the property.

In the order the court stated that the cause came on to be heard upon complainant's motion for the approval of the report of sale; also upon the amended objections to the report of sale of Mina S. and Louis A. Oyster, the two receivers of the International Life

Insurance Co. and two other parties; and also upon the verified petition of Stella Rosenberg (purchaser at the sale) praying for an order granting her leave to become a party to the record and that the master be directed to issue a certificate of sale to her. And the court, after considering the evidence and the arguments of respective counsel, and being fully advised, made the following findings in the order in substance:

1. That the sale of the property by the master on July 18, 1933, *for the sum of $5,000,* to Stella Rosenberg, "was at a *grossly inadequate price,*" and that the sale for such price "amounts to a constructive fraud upon the holders of the indebtedness."

2. That the fair cash market value of the property, at the time of the sale and at the present time, "was *several times the amount of said bid of $5,000* by Stella Rosenberg."

3. That the parties in interest, who were bidders at the sale, "were not given a fair and impartial opportunity to perfect their bid"; that because of the master's actions as set forth in the objections herein, "the rights of the parties were not protected"; and that "a great injustice will be caused to the owners of the indebtedness secured by the trust deed on the property herein foreclosed, if the court should approve this sale."

4. That it is apparent to the court that if the property be again legally offered for sale, no injury will be done to any party in the cause, that the consummation of a fraud will be prevented, and that the property "will bring at such sale at least three or four times the amount which it brought at the previous sale."

5. That "two responsible bidders appeared in open court on March 26, 1934, and showed conclusive evidence to this court that *they would bid at least $15,000 for the property,* if the same was again offered for

sale''; and that they exhibited to the court a certified check of $5,500 as evidence of their good faith.

6. That when the property was offered for sale on July 18, 1933, the master *"abused his discretion in refusing to continue the sale"* on the motion of the respective solicitors for the receivers of the International Life Ins. Co. and of Ward K. Doebler, ''for the reasons set forth in the affidavit of Harry A. Fleck,'' made a part of the amended objections filed herein.

And the court ordered and adjudged in substance (a) that the amended objections filed to the master's report of sale ''are hereby sustained and approved, and said report of sale is hereby disapproved, set aside and held for naught''; (b) that the master is hereby directed to readvertise the property and resell the same; (c) that he withhold the delivery of the certificate of the sale made by him on July 18, 1933; (d) that the costs of the readvertising and resale ''be paid by Mabel Weideman, the owner of the equity herein, out of the rents and profits derived by her from the rental of the property to Howard K. Hurwith, who is now the tenant on said property''; (e) that the master, at the time he reoffers the property for sale, ''accept none of the bids submitted at the resale, but that he submit to the court the names of the various bidders and the amounts of their bids, within 5 days from the date of said sale''; (f) that the master ''refrain from the issuance of any certificate of sale of the property until this court has approved the highest bid submitted by the master''; (g) that said Mabel Weideman and Howard K. Hurwith, and the members of their respective families, and their agents and servants, ''give access to the property to any parties asking to view the property for the purpose of becoming bidders at said resale''; (h) that Mabel Weideman file in this court, within 30 days, a

complete report and account of the rentals received by her, together with her expenditures herein, from the date she became the owner of the equity of the property; and (i) that Stella Rosenberg be given leave to become a party to the cause and the right to file her appearance herein.

From this order Stella Rosenberg duly perfected her appeal in this court. A report of the hearing and proceedings had in the superior court on March 26, 1934, was thereafter duly filed in that court, bearing the signature of the trial judge, dated April 16, 1934, and is contained in the present record. From the report the following in substance appears:

That the master's report of the sale of the property, filed September 6, 1933, was exhibited and considered by the court; that the amended objections (filed September 25, 1933) to the report, as well as the supporting affidavits of Harry A. Fleck, Harry W. Gahagan, and Robert Honore Brown, were read and considered by the court; and that all parties interested were present by their respective counsel.

That thereupon Stella Rosenberg, by her counsel, H. J. Rosenberg, presented her petition for leave to become a party to the record for the purpose of protecting her interests in the matter of her purchase of the property at the sale, "which motion was allowed and said petition ordered filed."

That thereupon her counsel "*admitted* for the record herein every allegation *of fact* contained in said amended objections to the master's report of sale, and each and every allegation of fact contained in the affidavits attached to and made a part of said objections"; that he also "specifically *admitted* the various *findings of fact,* as contained in said order of March 27, 1934"; that he "insisted that, assuming the correctness of all said statements of fact to be true," the same "did not strictly as a matter of law constitute a ground for refusing to confirm the master's report

of sale''; and that he ''further insisted that Stella Rosenberg (who appeared by him as her counsel at said sale and made an offer for the purchase of the property) was entitled to have said offer approved by the court and to have a certificate of sale issued to her.''

That thereupon the matter was fully argued by respective counsel; that the court considered the arguments, ''together with each and every admission of fact made by said H. J. Rosenberg''; that thereupon the court entered the order of March 27, 1934 (which sustained and approved all allegations contained in said objections to the sale), and disapproved, set aside and held for naught said master's report, and directed a resale of the property involved, etc.; and that ''the foregoing were all of the proceedings had upon the matter of the confirmation of said sale.''

In the amended objections to the confirmation of the sale, the following statements in substance were made, which are supported by the accompanying affidavits above mentioned:

1. That the sum of $5,000, for which the property was struck off to Stella Rosenberg at the master's sale of July 18, 1933, ''is not the full and fair value of the premises, but is grossly inadequate and unfair and amounts to a fraud in law.''

2. That the property on the date of the sale ''had a fair cash market value of $20,000, and it today has not depreciated in value.''

3. That through an inadvertence the receivers of the International Life Insurance Co. ''were prevented from making a bid for the reason that the Honorable Charles B. Davis, U. S. District Judge of the eastern division of the eastern district of Missouri left the district unexpectedly, and no other official was present with jurisdiction to enter an order in the cause of said receivership, then pending as No. 8308, authorizing them to draw a check to apply on a bid to be

made by them''; that in the decree of foreclosure there was a provision authorizing the master, at any time and from time to time in his discretion, to adjourn the sale, upon advising the persons present and giving notice, etc.; that Harry A. Fleck, solicitor for the receivers, was present at the sale of July 18, 1933, and *"made a motion to continue said sale,* with a guaranty of all expenses involved, but that the master *abused his discretion* in that behalf and denied the motion for the continuance. which ruling *destroyed all competitive bidding,* to the prejudice of these objectors''; that ''as a result the property was struck off to the only bidder, Stella Rosenberg, for $5,000, although the solicitor for the receivers made a bid of $6,000, qualified by the statement that he would produce the balance of cash required within a day or two after using his bonds on deposit''; and that the only objection made to a continuance of the sale ''was made by said H. J. Rosenberg, solicitor for the owners of the equity of redemption, Mabel Weideman, and who appeared at the sale on behalf of his wife, Stella Rosenberg.''

4. That after the sale had been made, said Judge Davis returned to his district; that on July 25, 1933 (7 days after the sale) the then receivers of the Insurance Co. ''caused an order to be entered, authorizing them as such receivers to make a bid as high as $10,000, in the event the property was offered for resale''; that as evidence of their good faith, the receivers ''are now able and willing to deposit $500 in cash and a certified check for $5500 with said master or the clerk of the court to guarantee a bid as high as $10,000.''

In the verified petition of Stella Rosenberg, filed March 27, 1933, she alleged *inter alia* that no order has been entered finally determining her rights as the purchaser at the sale; that she has paid the master $5,000; that ''a certificate of sale has been made out

by the master to her but *has not been delivered to her*''; and that she has a direct and vital interest in the proceedings, etc.

In urging the reversal of the order in question, Mrs. Rosenberg's counsel (H. J. Rosenberg) makes three contentions, viz.: (1) That the refusal of the court to confirm the master's sale of the property for $5,000 ''was arbitrary, not in accordance with established principles of law, and constituted an abuse of judicial discretion''; (2) that *''mere* inadequacy of price is not ground for disapproving a master's sale, unless the inadequacy is so gross as to amount to fraud''; and (3) that ''the court will not order a resale of property to protect one against the consequences of his own negligence.''

In urging the affirmance of the order, counsel for the receivers of the Insurance Co. and the other objectors to the confirmation of the master's sale make four contentions, in substance as follows: (1) That the court's refusal to confirm the sale and its order directing that a resale of the property be had were not arbitrary acts but were such as constituted the exercise of a sound judicial discretion under the admitted facts; (2) that it is a well established rule that the court will aid an interested party by ordering a resale to prevent the consummation of what amounts to a fraud upon and a loss to him, brought about by an abuse of discretion of an officer of the court; (3) that other well settled rules are that the highest bidder whose bid had been returned into court, is a mere offerer to purchase, and the confirmation of the sale is the final consent, and that the court, being in fact the vendor, may consent or not in its discretion; and (4) that each case should stand or fall upon its own facts or equities, and that, after all, the granting of equitable relief rests in the sound discretion of the court.

After reviewing the present record and the exhaustive briefs and arguments of opposing counsel, and considering numerous authorities, we are of the opinion that the order in question should be affirmed. We do not think that under the admitted facts the order should be considered as an arbitrary one or as an abuse of judicial discretion. Nor do we think that it appears from the evidence that negligence may be charged against the objectors. And the following holdings of our Supreme Court may appropriately be mentioned. In *Moeller v. Miller,* 315 Ill. 454, 460, it is said: ''The rule has often been announced that if in addition to the inadequacy of price there be any appearance of unfairness, or any circumstance, accident or occurrence in relation in the sale of a character tending to cause such inadequacy, then the sale will be set aside.'' (See, also, *Logar v. O'Brien,* 339 Ill. 628, 632; *Magnes v. Tobias,* 337 Ill. 605, 611; *Barnes v. Freed,* 342 Ill. 73, 78, 79.) And in *Miller v. Miller,* 332 Ill. 177, 179, 180, it is said: ''A sale by a master in chancery is not, until confirmed by the court, a sale in a legal sense. The chancellor has a broad discretion in the approval or disapproval of the sale. The highest bidder whose bid has been returned to the court as the best offer acquires no interest in or a right to the land and is a mere offerer to purchase. Confirmation is final consent and the court, being in fact the vendor, may consent or not, in its discretion. . . . This discretion, unless abused, will not be interfered with by a court of review.'' And in the well considered case of *Griswold v. Barden,* 146 Wis. 35, 37 (followed in *Suring State Bank v. Giese,* 210 Wis. 489, 492) it is said, italics ours:

''It has been said by this court that it is the settled practice of courts of equity to refuse a resale for *mere* inadequacy of consideration, and that this court will not depart from that rule *where no other cause exists.*

. . . This is doubtless a correct statement of the rule, but it seems from the argument in the present case that it may be easily misunderstood. *It must be strictly confined to cases where there is absolutely no fact appearing, except that the price is inadequate.* Whenever other facts appear, . . . , the court will readily refuse to approve the sale. No fraud is necessary to justify the court in so withholding its approval. *The question simply is*: Is the sale *under all the circumstances one of which the court, in justice to all parties, should approve?* If the *only* objection be that a small price was obtained, the court will doubtless feel constrained to approve, unless indeed the price be so small as to amount itself to a fraud if it were permitted to stand.''

And we may here refer to the opinion of this division of this Appellate Court, filed December 31, 1934, in the case of *Levy v. Broadway-Carmen Bldg. Corp.*, 278 Ill. App. 293.

The judgment order of March 27, 1934, appealed from, should be and is affirmed.

*Affirmed.*

Scanlan and Sullivan, JJ., concur.